827 P.2d 480

STATE of Arizona, Plaintiff–Appellee,

Arizona Department of Corrections,
Garnishee–Appellee,

v.

Patricia M. O'CONNOR, as personal rep-
resentative of the Estate of Giovanni
Vigliotto, Defendant–Appellant.

No. 1 CA–CV 90–066.

Court of Appeals of Arizona,
Division 1, Department A.

March 5, 1992.

Richard Romley, Maricopa County Atty. by Roderick D. MacMillan and Sydney Davis, Deputy County Attys., Phoenix, for plaintiff-appellee.

Russell S. Olds, Phoenix, for defendant-appellant.

## OPINION

TOCI, Judge.

Giovanni Vigliotto, a.k.a. Nikolai Peruskov,[1] appeals from the trial court's ruling that the Arizona Department of Corrections ("DOC") properly disbursed $8,423.32 to the clerk of the superior court from his "inmate trust account" in partial satisfaction of a restitution lien. Vigliotto contends the restitution lien statute, Ariz.Rev. Stat.Ann. ("A.R.S.") section 13–806, is an invalid *ex post facto* law as applied to him, that the DOC deprived him of due process of law under the state and federal constitutions when it filed a restitution lien against his inmate trust account without notice to him, and that the DOC deprived him of due process of law under both constitutions when it removed funds from his account without first providing him with notice and a hearing. We agree that the DOC violated his due process rights when his funds were taken and reverse the trial court on this issue.

## FACTS AND PROCEDURAL HISTORY

Vigliotto was convicted of violating A.R.S. sections 13–2310 (fraudulent

schemes and artifices) and 13–3606 (bigamy). On March 28, 1983, the court sentenced him to a term of imprisonment of thirty-four years and ordered him to pay $336,000.00 in fines and restitution. Forty-two thousand seven hundred thirty-nine dollars and nine cents of that amount was restitution to one of his victims.

On November 4, 1988, the state, through the Maricopa County Attorney, filed a writ of garnishment against the DOC to collect the judgment debt. The DOC answered stating that it was holding $14,470.59 of Vigliotto's inmate trust account subject to the writ.

After Vigliotto objected, the superior court conducted a hearing and quashed the writ, holding that it had no authority to garnish the state under the circumstances.[2] However, in its minute entry quashing the writ of garnishment, the court ordered the DOC to continue to hold the funds from his account pending the state's appeal to this court. The state appealed. We affirmed in *State v. Peruskov*, 166 Ariz. 28, 800 P.2d 15 (App.1990).

Contrary to the trial court's order to hold the funds, the DOC disbursed $22,893.91 from Vigliotto's inmate trust account to the clerk of the superior court between December 22, 1988 and April 18, 1989. Vigliotto discovered the transfer and filed an "emergency motion to stay clerk of the court from disbursement of funds" on April 25, 1989. Before Vigliotto filed the motion, however, the clerk of the superior court sent $15,450.76 to the victim.

In his "emergency motion," Vigliotto argued that the DOC's disbursement violated the court's order to hold the garnished funds. The state and the DOC jointly responded that the DOC was not acting under the garnishment when it disbursed Vigliotto's funds to the clerk of the superior court. Rather, the DOC claimed to be acting under a restitution lien the county at-

---

1. Vigliotto died while this appeal was pending and his personal representative was substituted as appellant. However, we will refer to the appellant as "Vigliotto."

2. The state may be garnished only under the limited circumstances enumerated in A.R.S. § 12–1601 (those in which the creditor is attempting to reach the salary of a state employee or officer).

torney filed on December 16, 1988, just before the trial court's order quashing the writ of garnishment.

After a hearing, the court found that the $22,893.91 taken from Vigliotto's account improperly included the $14,470.59 previously held by court order pending resolution of the garnishment appeal in *Peruskov*. To correct the improper disbursement, the court ordered the clerk to return to the DOC the money that remained in the hands of the clerk or $7,443.15 ($22,893.91 minus the $15,450.76 sent to the clerk before the emergency motion). The court further ordered the DOC to make up the balance, ($14,470.59 minus $7,443.15) $7,027.44, by either depositing that sum in cash into Vigliotto's inmate trust account or posting a bond in that amount. Finally, the court ruled that the payment of $8,423.32 ($22,893.91 minus the $14,470.59 subject to its order) to the victim was proper. It is this ruling that forms the basis for this appeal.

### ISSUES

I. Did the filing of the notice of appeal in the garnishment action divest the trial court of jurisdiction to rule on the disbursement of funds from the garnished account?

II. Does the restitution lien statute, A.R.S. section 13–806, violate the *ex post facto* prohibition of the United States Constitution?

III. Did the DOC violate Vigliotto's due process rights by filing a restitution lien against his inmate trust account or did the DOC violate his rights when it disbursed those funds?

IV. Did the trial court err by not finding the Maricopa County Attorney and his deputies in contempt?

### DISCUSSION

I. Jurisdiction

█ Early in this case, we questioned whether the trial court had jurisdiction to take any action after the date of the state's notice of appeal from the order quashing

the writ of garnishment. A trial court may not render any decision that would defeat or usurp an appellate court's jurisdiction of a case on appeal. *Continental Casualty Co. v. Industrial Comm'n*, 111 Ariz. 291, 528 P.2d 817 (1974). We informed counsel and provided them the opportunity to brief the issue.

Vigliotto's counsel filed a motion to dismiss this appeal instead of a brief. He argues that a trial court loses jurisdiction to rule on "all aspects of a case on appeal, save to preserve jurisdiction." The trial court, he contends, had no jurisdiction to approve the disbursement of the portion of the funds not affected by the freeze order in the garnishment action. We delayed ruling on the motion until we could consider the case on the merits. We now determine that the trial court acted within its jurisdiction and deny the motion to dismiss.

Although the court-made rule divesting a trial court of jurisdiction to rule on matters the subject of an appeal has been stated as broadly as Vigliotto's counsel suggests,[3] the supreme court adopted a more flexible approach in *Continental Casualty Co.*, 111 Ariz. 291, 528 P.2d 817 (1974). Citing *Castillo v. Industrial Comm'n*, 21 Ariz. App. 465, 467–69, 520 P.2d 1142, 1144–46 (1974), the court explained:

> The principle is well established that an appeal generally divests the trial court of jurisdiction to proceed except in furtherance of the appeal. However, this general principle is subject to many equally well established exceptions.... A review of the[se] 'exceptions' ... reveals that in actuality they are not exceptions, but are well-reasoned applications of the rationale which led to the formulation and adoption *by the courts* of the general principle in the first instance. This rationale is ... as follows:
>
> 'The jurisdiction of this court when properly invoked must be protected. It cannot be defeated or usurped to the extent that its decision when rendered be nugatory.'

3. *See, e.g., Whitfield Transp., Inc. v. Brooks,* 81    Ariz. 136, 141, 302 P.2d 526, 529 (1956).

By allowing the trial court to proceed with issues not directly involved in, or the subject matter of the appeal, the jurisdiction of the appellate court is adequately protected, and at the same time the trial court proceedings are not inordinately delayed pending the appellate decision.

*Continental Casualty Co.*, 111 Ariz. at 294, 528 P.2d at 820 (citations omitted).

■ One may argue that the rationale, as expressed in both *Continental Casualty Co.* and *Castillo*, applies only when intermediate or interlocutory orders are the subject of the appeal. *Continental Casualty Co.*, 111 Ariz. at 294, 528 P.2d at 820; *Castillo*, 21 Ariz.App. at 469, 520 P.2d at 1145. However, we believe a proper reading of those and later cases supports our holding that a trial court retains jurisdiction to act so long as that act cannot negate the decision in a pending appeal or frustrate the appeal process. *See Arizona Corp. Comm'n v. Citizens Utilities Co.*, 120 Ariz. 184, 193, 584 P.2d 1175, 1184 (1978) (When the appeal challenged the Corporation Commission's order establishing a fair rate of return to a utility company, the trial court's setting of a bond and its authorization of interim utility rates were held to be issues "not directly involved in the subject matter of the appeal," and thus a proper exercise of the trial court's jurisdiction.).

■ Here, the trial court took actions consistent with protecting our jurisdiction. First, it ordered the DOC to hold the garnished $14,470.59 pending the state's appeal. After it became apparent that the DOC had violated this order, the trial court ordered the superior court clerk to return the funds it had not yet disbursed to the victim and ordered the DOC to repay the deficit. The trial court secured the funds subject to the garnishment appeal and allowed disbursement only of the excess funds. Any orders the trial court entered relating to the excess funds at issue here could not negate this court's ruling in the garnishment action. We hold that the trial court had jurisdiction to enter the orders concerning the excess funds.

## II. *Ex Post Facto* Law

■ Vigliotto argues that the state cannot apply the restitution lien statute, A.R.S. section 13–806, to him without violating the constitutional prohibitions against *ex post facto* laws. *See* U.S. Const. art. I, § 10; Ariz. Const., art. 2, § 25. Vigliotto was convicted in 1983. The legislature enacted the restitution lien statute in 1986. Laws 1986, Ch. 248, § 7. Vigliotto argues that because the lien statute subjects his property to an encumbrance that did not exist at the time of the commission of his offense, the lien statute is an additional disadvantage to him, not existing at the time of his conviction.

We hold that the restitution lien statute does not violate the *ex post facto* prohibitions. The United States Supreme Court has established the test for determining an *ex post facto* law as follows:

> It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto.*

*Collins v. Youngblood*, 497 U.S. 37, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169–70, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925)). Clearly, the restitution lien statute does not subject Vigliotto to criminal liability for an act that was innocent when committed, nor does it deprive him of a previously-available defense. The inquiry, then, is whether the statute makes Vigliotto's punishment more burdensome.

Vigliotto became obligated in 1983, to pay the $336,000.00 fine that included $42,-739.09 in restitution. The statute in effect in 1983 provided for the enforcement of

payment of the restitution.[4] The perfection of the lien neither increased Vigliotto's obligation nor made his punishment more burdensome. Finally, we acknowledge that the purpose of restitution is to make the victim whole; it is not punishment exacted by the state. *State v. Fancher*, 169 Ariz. 266, 267, 818 P.2d 251, 252 (App. 1991). For the above reasons, we hold that the application of a statute that the legislature designed to facilitate the collection of previously existing, independent, court-ordered debts owed by criminal defendants as a result of their criminal acts does not increase punishment.

III. Due Process

The United States Constitution provides: "No State ... shall ... deprive any person of ... property, without due process of law." U.S. Const. amend. XIV, § 1. The Arizona Constitution similarly provides: "No person shall be deprived of ... property without due process of law." Ariz. Const. art. 2, § 4. Vigliotto argues that both the filing of the restitution lien without actual notice to him and the method of taking his funds violated his due process rights.

First, we observe that the state established the debt for which restitution was owed during valid criminal proceedings to which Vigliotto was a party and in which he was protected by procedural due process. Second, Vigliotto does not demonstrate that the recording of the lien deprived him of any property. A lien is a charge or encumbrance upon property to secure the payment or performance of a debt or obligation, and is clearly distinct from the debt or obligation it secures. *Matlow v. Matlow*, 89 Ariz. 293, 297–98, 361 P.2d 648, 651 (1961); *Mathis v. Liquor Bd.*, 146 Ariz. 570, 574, 707 P.2d 974, 978 (App.1985). It is only through enforcement of a lien that property is taken. Thus, filing the lien with the secretary of state merely perfected the lien against Vigliotto's personal property. It did not deprive him of his property. Because there was no property deprivation, we hold that actual

notice of the lien filing was not constitutionally required.

Vigliotto next argues that the DOC deprived him of due process when, without notice or a hearing, it took the money from his "inmate trust account" and gave some of it to the victim. We agree.

The state concedes that the due process clauses apply in this case because Vigliotto was deprived of property. The state also admits the violation: "[D]ue process does require that actual notice of the proceeding to foreclose a lien be given because that procedure involves the taking of one's property." Answering Brief at p. 14. In this case, not only did the DOC deprive Vigliotto of actual notice of the proceeding to collect funds from his "inmate trust account," it deprived him of the proceeding altogether.

The state argues, however, that the court rectified the violation of Vigliotto's due process rights by the post-taking hearing on his "emergency motion." We disagree. The United States Constitution's Due Process Clause requires the complainant be given an opportunity to be heard at a significant time and in a significant manner. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982); *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971); *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). While we realize this does not mandate a hearing *prior* to a property deprivation in every instance, we note, as the United States Supreme Court did in *Logan*, "the Court's decisions suggest that, absent 'the necessity of quick action by the State or the impracticality of providing any pre-deprivation process,' a post-deprivation hearing here would be constitutionally inadequate." 455 U.S. at 436, 102 S.Ct. at 1158 (citations omitted).

The state has not alleged the need for quick action in this case. Neither has it contended that a predeprivation hearing would have been impractical. We do not think this case involves the "extraordinary

4. Former A.R.S. § 13–806(E), Laws 1978, Ch. 201, §§ 110, 114.

situation" that would "justify postponing notice and opportunity for a hearing" until the seizure is complete. *Fuentes v. Shevin,* 407 U.S. 67, 82, 92 S.Ct. 1983, 1995, 32 L.Ed.2d 556 (1972).

We hold that a prior hearing was required in this case. In doing so we have considered the importance of the private interest, the length or finality of the deprivation, the likelihood of governmental error, and the magnitude of the governmental interests involved. *Logan,* 455 U.S. at 434, 102 S.Ct. at 1157.

Because we decide that the conduct of the DOC violated Vigliotto's federal due process rights, we do not decide whether that conduct was an independent violation of his state due process rights.

IV. Contempt

Finally, Vigliotto argues that the trial court erred by refusing to hold the county attorney and his deputies in contempt and by not imposing sanctions on them for defying its order to hold the garnished funds.

■■■ Vigliotto lacks standing to appeal this issue. An aggrieved person may appeal from a judgment. Rule 1, Arizona Rules of Civil Appellate Procedure, 17B A.R.S. However, a person may not appeal from any portion of a judgment that does not aggrieve him. *Matter of Gubser,* 126 Ariz. 303, 306, 614 P.2d 845, 848 (1980). A person is aggrieved by any part of a judgment that operates "to deny [him] some personal or property right or impose[s] a substantial burden upon [him]." *Id.* (citing *Compass Rlty. & Inv. Corp. v. A A Refrig. & Heat., Inc.,* 21 Ariz.App. 214, 517 P.2d 1107 (1974)). Vigliotto does not argue that a contempt order was necessary to force the state to return the funds to his account. In the absence of a showing that Vigliotto was denied a personal or property right by the trial court's refusal to hold the state in contempt, *see Gubser,* 126 Ariz. 303, 614 P.2d 845 (complainant had no standing to appeal award of attorney's fees to opposing party's counsel paid from a public fund), he is not aggrieved.

CONCLUSION

The method used by the state to seize funds held in Vigliotto's inmate trust account violated his federal due process rights. The DOC improperly seized the entire $22,893.91. We affirm the replacement of $14,470.59 and further order the DOC to replace the balance of $8,423.32. Affirmed in part, reversed in part.

GRANT, P.J., and LANKFORD, J., concur.