839 P.2d 1135

**STATE of Arizona, Appellee,**

v.

**William Joel STEFFY, Appellant.**

**No. 1 CA–CR 91–1042.**

Court of Appeals of Arizona,
Division 1, Department B.

Oct. 1, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Robert S. Golden, Asst. Atty. Gen., Phoenix, for appellee.

Neal W. Bassett, Phoenix, for appellant.

## OPINION

JACOBSON, Presiding Judge.

The only issue raised on appeal is whether the trial court erroneously ordered William Joel Steffy (defendant) to pay restitution to the victim of an aggravated assault for unpaid medical expenses for which the victim expects to receive reimbursement from an insurance carrier who has not requested restitution. We find no error and affirm.

### Facts and Procedural Background

Defendant's convictions for manslaughter and two counts of aggravated assault arose from an automobile accident that occurred while defendant was driving a stolen car, when his blood alcohol content was between .25% and .308%, and while driving at between 80 and 100 miles per hour in the wrong lane on Scottsdale Road. Defendant collided head-on with another car, severely injuring the two passengers in that car and killing the passenger in his car.

Defendant was charged by indictment with one count of second degree murder, a class 1 felony, two counts of aggravated assault, class 3 felonies, and one count of theft, a class 3 felony. The state filed an allegation of the dangerous nature of the felonies, pursuant to A.R.S. § 13–604. Defendant subsequently entered into a plea agreement in which he agreed to plead no contest to one amended count of manslaughter, a class 3 dangerous felony, and to two counts of aggravated assault, class 3 non-dangerous felonies. The parties agreed that defendant would be sentenced to between 12 and 15 years imprisonment on the manslaughter count, and that the aggravated assault counts would receive concurrent sentences. Defendant agreed to pay restitution to all victims, including the victim of the dismissed theft count, not to exceed $100,000.00. In return, the state agreed to dismissal of the remaining count and allegations.

At the change of plea hearing, the trial court advised defendant of the rights he was waiving and the consequences of his plea of no contest, and determined that the plea was entered into knowingly, voluntarily, intelligently, and was factually based. The court accepted the plea and ordered the preparation of a presentence report.

Regarding restitution, the presentence report indicated that the probation officer had been unable to contact the victims of the manslaughter and theft counts, so no restitution amounts were available for those counts. On the aggravated assault counts, the presentence report set out the expenses the two passengers of the other vehicle had incurred. The first victim had incurred expenses of $3,800.00 for the loss of her uninsured vehicle and $10.00 for her insurance deductible for medical expenses. Her insurer had paid medical expenses of

$39,985.05, and was seeking reimbursement. Regarding the second victim, the presentence report stated:

> [This victim, ...] sent a letter to this officer concerning his sentencing comments. This letter is attached for the Court's perusal. [The victim] stated that thus far he has paid $411.00 in out-of-pocket expenses as a result of the accident. His medical bill was $24,737.10. He believes Blue Cross/Blue Shield has paid $15,574.60. *This leaves $9,162.50 in unpaid bills.* [The victim] does not know how much of this amount he will be responsible for and whether he will be required to pay his $2,000.00 insurance deductible. *He is presently asking for $9,573.50 in restitution. He believes this amount will be substantially reduced in the future once his insurance company pays more of the bills....*
>
> [The victim's] insurance company is Blue Cross/Blue Shield of California. Patty Gillespie, from the third party liability department, stated that because the third party was uninsured, *Blue Cross/Blue Shield does not request reimbursement.* As of October 1, 1990, the company is not pursuing reimbursement.

(Emphasis added.) The presentence report concluded:

> At the present time, it appears the defendant owes a total of $54,743.55 in restitution. *However, [the victim] stated his bill should be reduced in the future as his insurance company pays additional bills.* One of his insurance companies, State Farm Insurance, expects to be paying some of [the victim's] bills. *Although the company has made no payments yet, they would like to receive restitution for those future payments....* As an accurate restitution amount cannot be established at this time, this officer will be recommending a restitution hearing be held at some point in the future.

(Emphasis added.) The victim's letter, attached to the presentence report, stated, in part:

> Physically I sustained the following injuries: Pulmonary contusion, Ulna bone broken in right arm, Compound fracture of radius bone in left arm, broken right ankle, Lacerations of the face, neck and chest.
>
> Fortunately I was only in the hospital for seven days. Because both arms and my ankle were broken I was confined to a wheelchair for the next two months. I had pins in my right arm for two months, and casts and braces on for over 3 months. In addition I had to go through extensive physical therapy to regain the movement I had lost in my limbs.
>
> I am enclosing the bills for the medical treatment I received through Scottsdale Memorial Hospital in Arizona, and through Orthopedic Associates of San Diego in California. The sum of these bills comes to $24,387.06. Included in this amount is two prescriptions I had filled at Longs Drug Stores, Inc.
>
> Some other items I was wearing that were destroyed in the accident include my pants, shoes, shirt, and watch. The value of these items comes to $185.
>
> Most of the $24,387.06 in medical bills has been paid by my health insurance, Blue Shield of California. I also had uninsured motorist coverage with my auto insurance State Farm.
>
> . . . . .
>
> ... I was working as a maintenance worker for $10.64 per hour.... Because of this accident I lost about 150 hours overtime alone which comes to $2,392.50 at $15.95 per hour. In regular wages I figure I have lost about $12,000 since the accident. I have been looking for employment since the time I was released to go back to work. Unfortunately due to the current recession I am still unemployed.

At sentencing, the court afforded defendant the opportunity to set a mitigation hearing, which defendant declined. The court also afforded defense counsel the opportunity to comment on the accuracy of the presentence report, and counsel did not question the amount of restitution recommended in that report. No request for a

restitution hearing was made prior to sentencing.

After determining that no restitution was due in the manslaughter and theft counts, the court ordered that defendant pay the other two victims a total of $54,743.55 in restitution, "to be distributed equally amongst the victims as set forth on the restitution ledger request."[1] Defendant was sentenced to an aggravated term of twelve years on the manslaughter count, with credit for 325 days already served. The court also sentenced defendant to concurrent presumptive terms of five years imprisonment on the aggravated assault counts, to be served consecutively to the manslaughter sentence.

Defendant timely appealed.

### Discussion

We first note that defendant neither objected in the trial court to the amount of restitution imposed in this case, nor requested a restitution hearing and, in fact, specifically waived his right to a mitigation hearing. When the trial court asked defense counsel if she had anything to add to the presentence report, no objection was made to the amount of restitution recommended in that report, and no request for a restitution hearing was made.

■■■ A defendant has a due process right to contest the information on which the amount of a restitution order is based. *State v. Fancher*, 169 Ariz. 266, 267, 818 P.2d 251, 252 (App.1991). The amount of a victim's loss is normally determined as part of sentencing, and that is where the objection may be made, or a restitution hearing requested. *See State v. Scroggins*, 168 Ariz. 8, 9, 810 P.2d 631, 632 (App.1991). However, the right to be heard as to the amount of restitution may be waived. *Cf. State v. Lewus*, 170 Ariz. 412, 414, 825 P.2d 471, 473 (App.1992) (defendant does not waive due process right to contest amount of restitution because he was not present when order was entered). We believe defendant clearly waived his right to a restitution hearing by his explicit waiver at sentencing and by counsel's failure to object to the amount imposed.

■■■ Moreover, by not raising the issue of insurance reimbursement at sentencing, he has waived the right to present this issue on appeal. However, because the state has not argued waiver and because the issue involves undisputed facts and raises an issue of interest to the state at large, we will address it notwithstanding defendant's failure to raise this issue in the trial court. *See State v. Prieto*, 172 Ariz. 298, 836 P.2d 1008 (App.1992).

On appeal, defendant argues that it was improper for the trial court to order restitution to the victim for medical bills for which the victim expects reimbursement when the insurer does not request reimbursement. This argument is faulty.

■■■ As we have previously pointed out, restitution of full economic loss to the victim of a crime is mandatory under our sentencing scheme. *See* A.R.S. § 13-603(C), A.R.S. § 13-804; *State v. French*, 166 Ariz. 247, 801 P.2d 482 (App.1990). The fact that a victim does not request restitution does not change the court's obligation to order it; indeed, in the context of determining the effect of a victim's civil settlement with a defendant's insurer upon a criminal restitution order, we have previously stated:

> The victim's release of his or her claims does not encompass restitution; restitution is not a claim which belongs to the victim, but a remedial measure that the court is statutorily obligated to employ.

*State v. Iniguez*, 169 Ariz. 533, 535, 821 P.2d 194, 197 (App.1991) (court also noted that "the victims' attorney advised the probation officer that they did not wish to pursue criminal restitution from the defendant," *id.*). Thus, the fact that an insurer has not requested reimbursement does not preclude the court from ordering restitu-

---

1. We do not have the restitution ledger in the record on appeal, but do not find it relevant to our analysis. *See State v. Ferguson*, 165 Ariz. 275, 276 n. 1, 798 P.2d 413, 414 n. 1 (App.1990).

The sentencing minute entry in this case fully itemizes the parties to whom restitution should be made and the specific amounts.

tion for an economic loss resulting from a defendant's admitted crime, if that insurer is properly a "victim" of the crime.

"Economic loss" is broadly defined to include medical expenses and lost wages. *See* A.R.S. § 13–105(11); *Iniguez,* 169 Ariz. at 536, 821 P.2d at 198. When an insurer has reimbursed a victim for an economic loss, the statutory mandate of restitution to the "victim" is best served if the restitution order includes the insurer as a "victim" suffering economic loss from defendant's crime. *State v. Merrill,* 136 Ariz. 300, 301, 665 P.2d 1022, 1023 (App. 1983); *State v. Morris,* 173 Ariz. 14, 839 P.2d 434 (App.1992). Such an order "forces [defendant] to recognize the specific consequences of his criminal activity and accept responsibility for those consequences." *Merrill,* 136 Ariz. at 302, 665 P.2d at 1024. Reimbursement of the insurer is thus consistent with the rehabilitative purposes of restitution. *See Iniguez,* 169 Ariz. at 535, 821 P.2d at 197.

However, because restitution is not intended to be punitive in nature, we have attempted to prevent situations where payment beyond full compensation would create a "windfall" to the victim. *See, e.g., State v. Howard,* 163 Ariz. 47, 51, 785 P.2d 1235, 1239 (App.1989) ("the purpose of restitution is to make the victim whole, not to punish"); *Iniguez,* 169 Ariz. at 535, 821 P.2d at 197 ("Because a primary purpose of restitution is to make the victim whole, and the other aim of restitution is rehabilitative rather than punitive, payment beyond that necessary to compensate does not serve the Legislature's purposes").

In this case, defendant argues that the trial court's order of restitution to the victim, which includes amounts that may potentially be reimbursed in the future, will result in a windfall to this victim if both the insurer and defendant reimburse the victim.

This "windfall" argument has been made in the past primarily in cases either where the total amount of the victim's actual loss is somewhat speculative at the time of sentencing because of unforeseen events that could reduce the anticipated amount of economic loss, or where the victim has already been compensated for a loss due to crime. *See, e.g., State v. Howard,* 168 Ariz. 458, 815 P.2d 5 (App.1991) (restitution order included amounts estimated for victim's future medical expenses and future lost wages); *State v. Ferguson,* 165 Ariz. 275, 798 P.2d 413 (App.1990) (amount of restitution for stolen property must be reduced by value of items police had recovered and returned to victims). In those cases, a potential existed that a defendant might be ordered to pay an amount greater than the loss he had actually caused.

Unlike these cases, the restitution awarded the victim in this case was for medical and out-of-pocket expenses already incurred but as yet unpaid. They are due and owing; the only uncertainty remaining is to whom they should be paid, the victim or the insurer. Thus, the restitution order in this case will not result in defendant's paying any more in restitution than the full established economic loss caused to this victim by his crime. It is true, however, that the potential exists that the victim will be paid twice; once by the insurer and once by defendant.

Defendant suggests that the proper procedure for dealing with this is to not order the additional restitution that is expected to be compensated by the insurer, but give the victim the opportunity to "reopen" the case if the insurer does not pay the remaining amounts. This suggestion, however, results in an order of restitution for an amount less than the established economic loss to the victim, which, as we have previously pointed out, the trial court has no discretion to do.

The state suggests that, at the time of sentencing, the trial court should order the full amount of economic loss to the victim, and leave the insurer with its civil remedies of offset and subrogation to recover any amounts it subsequently pays the victim. However, we have previously disapproved of this posture as well:

> The insurance company indemnifying [the victim] for losses as a result of [defendant's] criminal conduct is in the same position of economic loss as [the

victim]. To hold that restitution should only be paid to [the victim] would require payment of the total losses to [the victim], necessitating a subrogation action between the insurance company and [the victim]. The restitution statutes do not give any indication that such a result is appropriate.

*State v. Morris*, 173 Ariz. at 16, 839 P.2d at 436.

Rather, we believe the better procedure at the time of sentencing is to award the insurer the amounts it has already paid for the victim's medical expenses, and award the victim his own out-of-pocket costs as well as any unpaid medical expenses. If the insurer subsequently covers those unpaid medical expenses, it may, as a "victim," pursuant to A.R.S. § 13–804(I),[2] petition the court at that time, based on a change of circumstances, to modify the manner in which defendant's monthly payments are made so that the insurer is reimbursed for the insured amounts rather than the victim.

Along these lines, we have previously recommended similar sensible procedures depending on the circumstances at the time of sentencing. For example, in *State v. Howard*, we noted that the trial court made the award for future anticipated expenses "with the caveat that the amounts would be adjusted downward if the victim's medical expenses proved to be less or if the victim was able to return to work sooner than anticipated." 168 Ariz. at 460, 815 P.2d at 7. In *Iniguez*, we said:

The possibility that the second insurance policy would pay another $50,000.00 to the victim further complicates this matter. If this sum is paid, then the restitution order can be adjusted so that the combined restitution and settlement amounts do not exceed the victim's economic loss. *See People v. Stacy*, [64 Ill.App.2d 157] 212 N.E.2d [286] at 288 [ (1965) ] (if victim recovers civil damage verdict, court may later consider a set-off in restitution order against the damage award but should not anticipate award). Alternatively, an escrow fund may be utilized.

169 Ariz. at 537, 821 P.2d at 199 (footnote omitted). Additionally, if defendant wishes to change his restitution payment from the victim to the insurer because of a subsequent reimbursement, he is also entitled to petition the court to modify the order pursuant to A.R.S. § 13–804(I). In our opinion, public policy is best served by placing the initial burden of payment on defendant, who caused the economic loss.

We, therefore, hold that the trial court did not err in ordering payment of restitution for the unpaid medical expenses to the victim even though future reimbursement may be paid by an insurer who has not sought reimbursement. Defendant has not contested the amount of restitution imposed in this case, and we find the record contains sufficient evidence to support a finding of that amount.[3] *See Fancher*, 169 Ariz. at 268, 818 P.2d at 253. We have also searched the record for fundamental error and have found none. Accordingly, the convictions and sentences are affirmed.

TAYLOR and EUBANK, JJ., concur.

---

**2.** A.R.S. § 13–804(I) provides: "The defendant, the state and persons entitled to restitution pursuant to a court order, based on a change of circumstances, may petition the court at any time to change the manner in which restitution is paid. . . ."

**3.** We do note, however, that the trial court's failure to award restitution in the amount of $15,574.60 to Blue Cross/Blue Shield for established expenses it had already paid may have violated the court's statutory obligation to order restitution for the full economic loss, regardless of that insurer's failure to request restitution. The trial court also failed to award restitution for the lost wages that were established by the victim. However, because the state has failed to cross-appeal, we lack subject matter jurisdiction to determine an issue detrimental to defendant's own appeal. *State v. Dawson*, 164 Ariz. 278, 792 P.2d 741 (1990). However, if we had found error based on defendant's arguments, as part of our remand we could have instructed the court to determine those issues as well. *See State v. Anderson*, 171 Ariz. 34, 827 P.2d 1129 (1992) (when improperly imposed portion of sentence is successfully challenged on appeal, court can remand for resentencing even if it will increase defendant's sentence).