979 P.2d 543

**In re KORY L.**

**No. 1 CA–JV 98–0199.**

Court of Appeals of Arizona,
Division 1, Department E.

May 13, 1999.

As Amended May 18, 1999.

---

Richard M. Romley, Maricopa County Attorney by Linda Alauria, Deputy County Attorney Attorneys, Phoenix, for Appellee

Gabriel Valdez, Jr. Attorney, Phoenix, for Appellant

## OPINION

NOYES, Judge

¶ 1 Pursuant to a written plea agreement, Kory L. ("Juvenile") pleaded delinquent to Criminal Trespass and stipulated to restitution of $4,362.62. When the court told Juvenile's mother ("Appellant") that she, too, could be ordered to pay restitution, Appellant requested a restitution hearing and the court set one. At that hearing, however, the court ruled that Appellant was bound by Juvenile's stipulation as to the amount of restitution. Appellant appealed from the ensuing restitution order. We conclude that Appellant had the right to a meaningful restitution hearing.

¶ 2 We have jurisdiction of the appeal pursuant to Arizona Revised Statutes Annotated ("A.R.S.") section 8–236(A) (Supp. 1998).

## STANDING

¶ 3 The State suggests that Appellant lacks standing to appeal because a parent is not a party to a delinquency proceeding. The only named parties to a delinquency proceeding are the State and the juvenile, true, but the appealed-from order was imposed on Appellant herself, which makes her an aggrieved party. Rule 24 of the Arizona Rules of Procedure for the Juvenile Court provides that "[a]ny aggrieved party may appeal from a final order of the juvenile court." *See also* A.R.S. § 8–236(A) (Supp. 1998) (providing that "any aggrieved party" in any juvenile court proceeding may appeal). Appellant has standing to appeal an order that she pay restitution.

## RIGHT TO COURT–APPOINTED COUNSEL

¶ 4 The court appointed counsel for Appellant at the restitution hearing, but Appellant now argues that she was entitled to appointed counsel at Juvenile's change-of-plea proceeding, because it was there that he stipulated to the restitution amount. Appellant relies on A.R.S. section 8–225 (Supp.1998)[1] and Rule 6(C), Arizona Rules of Procedure for the Juvenile Court.[2]

¶ 5 The references to parents and guardians in Rule 6 and section 8–225(B) express legislative intent to involve those persons in the juvenile's decision to waive his or her right to appointed counsel. Rule 6 and section 8–225(B) are based on the juvenile's right to counsel; they cannot be reasonably read to confer a right to counsel on the juvenile's parents in a delinquency action. As we stated in *Navajo County Juvenile Action No. JV–94000086*, "Rule 6(c) and § 8–225(C) provide important procedural safe-

---

1. Section 8–225 provides in pertinent part as follows:

   A. In all proceedings involving offenses, dependency or termination of parental rights that are conducted pursuant to this title and that may result in detention, a juvenile has the right to be represented by counsel.
   B. If a juvenile, parent or guardian is found to be indigent and entitled to counsel, the juvenile court shall appoint an attorney to represent the person or persons unless counsel for the juvenile is waived by both the juvenile and the . parent or guardian.
   . . . .
   E. If a juvenile is entitled to counsel and there appears to be a conflict of interest between a juvenile and the juvenile's parent or guardian including a conflict of interest arising from pay-

   ment of the fee for appointed counsel under subsection G of this section, the juvenile court may appoint an attorney for the juvenile in addition to the attorney appointed for the parent or guardian or employed by the parent or guardian.

2. Rule 6(C), Arizona Rules of Procedure for the Juvenile Court, provides as follows:

   A juvenile may waive right to counsel if the court finds that the waiver is knowingly, intelligently and voluntarily given in view of his age, education, apparent maturity and within the presence of a parent, guardian or custodian, at the time of waiver. The waiver of counsel should also be obtained from parents, guardian or custodian in attendance on behalf of the child and themselves.

guards on the waiver of counsel in juvenile court and reflect a legislative judgment that children may well lack the experience and understanding to competently determine the best course in legal proceedings that may critically affect their lives." 182 Ariz. 568, 570, 898 P.2d 517, 519 (App.1995). *See also In re Gault,* 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) ("[T]he child and his parents must be notified of *the child's right* to be represented by counsel" (emphasis added).).

¶ 6 Section 8–225(E) does refer to the parent's attorneys, but it cannot reasonably be construed to create a parent's right to be appointed an attorney in delinquency proceedings. Section 8–225 applies to all types of proceedings in juvenile court, including severance proceedings in which a parent does have the right to appointed counsel. *See Pima County Juv. Action No. J–64016,* 127 Ariz. 296, 298, 619 P.2d 1073, 1075 (App. 1980). No Arizona statute, however, gives parents the right to appointed counsel in delinquency proceedings. We conclude that the court did not err by failing to appoint counsel for Appellant at Juvenile's change-of-plea proceeding.

¶ 7 We also conclude that Appellant had no due process right to appointed counsel at any time in this delinquency proceeding. In reaching this conclusion, we follow *State ex rel. Corbin v. Hovatter,* 144 Ariz. 430, 698 P.2d 225 (App.1985), and the analysis it used in deciding that an indigent who was being civilly prosecuted for violating the Arizona Consumer Fraud Act and the Arizona Racketeering Act had no right to appointed counsel:

A due process analysis begins from the presumption that an indigent's right to appointed counsel is recognized only where the litigant may lose his physical liberty if he loses the litigation. The presumption is

weighed against the three elements set out in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976): the nature of the private interests at stake, the interest of the state, and the risk that the procedures used will lead to erroneous decisions. Each of these elements, individually weighed, are then set against the presumption. Unless the individual's interests are strong, the state's interests weak, and the risk of error high, it cannot be said that due process requires the appointment of counsel.

*Id.* at 431, 698 P.2d at 226 (internal citations omitted).

¶ 8 The *Hovatter* analysis produces the following results in this case: Appellant's physical liberty is not at stake; Appellant's financial interest is no stronger than the State's interest that the victim receive restitution; and the risk of procedural error in a restitution hearing is not high. The court has considerable discretion in juvenile proceedings. *See* Ariz. R.P. Juv. Ct. 7(a) ("The conduct of the hearing shall be as informal as the requirements of due process and fairness permit."); *Juvenile in Mohave County Juv. Ct. Cause No. J–96–560 v. Superior Ct.,* 189 Ariz. 515, 517, 943 P.2d 875, 877 (App.1997) (holding that juvenile courts have broad power to make proper dispositions). Whether a restitution hearing produces a just result largely depends on the exercise of judicial discretion. Appellant could certainly be represented by counsel on the restitution issue, if she so desired, but Appellant had no right to appointed counsel.

### CONSTITUTIONALITY OF A.R.S. SECTION 8–341(H)

¶ 9 The order that Appellant pay restitution for Juvenile's crimes was based on A.R.S. section 8–341(H) (Supp.1998).[3] Ap-

---

3. *Section 8–341(H) provides as follows:*

H. If after ordering restitution pursuant to subsection G of this section the court subsequently finds that the earning capacity of the juvenile is insufficient to pay restitution to the victim, the court, in the same proceeding, may order one or both of the juvenile's custodial parents to make restitution to the victim of the offense for which the juvenile was adjudicated delinquent. The

amount of restitution shall not exceed the liability limit established pursuant to § 12–661. If the court orders the juvenile's parents to make restitution pursuant to this subsection, the court shall order the juvenile to make partial restitution, regardless of the juvenile's insufficient earning capacity. The court shall not consider the ability of the juvenile's parents to pay restitution before making a resti-

pellant argues that the statute is unconstitutional because it punishes an innocent party for the crimes of another. She relies on *In re One 1965 Ford Mustang*, 105 Ariz. 293, 463 P.2d 827 (1970), in which the State sought forfeiture of a parent's vehicle because her child had transported drugs in it. *Id.* at 294, 463 P.2d at 828. The court held that the State could not forfeit the vehicle of an innocent parent who had no reason to suspect her child of using it to transport drugs. *See id.* at 300, 463 P.2d at 834. The court also noted that "forfeiture was a *penalty for a criminal offense.*" *Id.* at 299, 463 P.2d at 833 (emphasis in original).

■ ¶ 10 Restitution is not a penalty; its primary purpose is to make the victim whole. *See, e.g., In re Estate of Vigliotto*, 178 Ariz. 67, 69, 870 P.2d 1163, 1165 (App. 1993) (holding that restitution order does not abate on death of defendant); *State v. Carbajal*, 177 Ariz. 461, 464, 868 P.2d 1044, 1047 (App.1994); *State v. Freeman*, 174 Ariz. 303, 306, 848 P.2d 882, 885 (App.1993). Other purposes of restitution are to encourage defendant's rehabilitation and to deter his future criminal conduct. *See Pima County Juv. Action No. 45363–3*, 151 Ariz. 541, 541, 729 P.2d 345, 345 (App.1986). Those purposes are not applicable to innocent parents, but making those parents financially responsible for their child's criminal behavior will presumably more fully "bring home" to the child the need to improve behavior and not commit future crimes. Parental financial responsibility for misbehaving children is well-established public policy in Arizona. *See, e.g.*, A.R.S. § 12–661 (Supp.1998) (imputing to "parents or legal guardian having custody or control of minor" up to $10,000 in civil liability for damage caused by malicious or wilful misconduct of minor). Section 8–341(H) is consistent with that policy, and we hold it constitutional.

### DUE PROCESS

■ ¶ 11 We also hold that a parent is entitled to due process of law before being deprived of property pursuant to a section 8–341(H) restitution order. Due process requires that a person whose property is taken be given an opportunity to be heard "at a significant time and in a significant manner." *State v. O'Connor*, 171 Ariz. 19, 23, 827 P.2d 480, 484 (App.1992) (finding due process violation when, pursuant to a restitution lien, State took money from inmate's trust account without notice or hearing). When the court ruled that Appellant was bound by Juvenile's stipulation as to the amount of restitution, the court denied Appellant the opportunity to be heard in a significant manner on that issue.

¶ 12 Juvenile and his counsel are free to negotiate whatever agreement they can with the State to resolve the pending charges against Juvenile, but they are not free to negotiate what Appellant might have to pay pursuant to section 8–341(H). That statute is not a true vicarious liability statute, like section 12–661, in which the minor's liability is imputed to the parent and both are jointly and severally liable for any actual damages up to $10,000 for each tort of the minor.

■ ¶ 13 Under section 8–341(H), if the court finds that the juvenile cannot pay the full amount of restitution, the court "may" order the parents to do so, and, in that event, it must also order the juvenile to make partial restitution. The statute calls for the exercise of judicial discretion regarding both the parents and the juvenile, and it contemplates that, if a parent is ordered to pay restitution, the juvenile and the parent will be ordered to pay separate amounts. Because of these separate issues and orders, we hold that, just as a defendant·has a due process right to contest restitution, *see State v. Steffy*, 173 Ariz. 90, 93, 839 P.2d 1135, 1138 (App.1992), so, too, does a parent whose restitution liability is based on section 8–341(H).

¶ 14 We agree with the State that Appellant had no standing to intervene in the plea agreement between Juvenile and the State, for "it is the *juvenile* who stands to lose his liberty interest in a delinquency proceeding, not his parents." A juvenile accused of de-

---

tution order. The court may consider a statement from the victim concerning damage for lost wages, reasonable damages for injury to or loss

of property and actual expenses of medical treatment for personal injury, excluding pain and suffering.

linquency has a powerful incentive not to contest restitution if the State gives the juvenile a break on the "liberty" issues. Here, for example, the State first charged Juvenile with Theft, a Class 3 felony, but it later offered to let him plead delinquent to Criminal Trespass, a Class 2 misdemeanor, if Juvenile stipulated to the amount of restitution. Juvenile and his counsel would be foolish to jeopardize a Class 2 misdemeanor plea bargain by contesting an amount of restitution that Juvenile may or may not be ordered to pay. Because Juvenile's liberty interest is of primary importance to him, neither he nor his counsel can be required to protect Appellant's restitution rights when they are negotiating with the State to resolve the pending charges against Juvenile.

¶ 15 Appellant had the right to a meaningful hearing on restitution prior to it being imposed on her. She had a hearing, but that hearing lost its meaning when the court announced that Appellant was bound by Juvenile's stipulation on restitution.

¶ 16 The right to contest restitution can be waived. *See Steffy,* 173 Ariz. at 93, 839 P.2d at 1138 (finding waiver when defendant failed to object to the amount of restitution or request a restitution hearing and specifically waived a mitigation hearing). Appellant was not asked to waive her right to contest the amount of restitution, and she did not do so; she invoked that right.

## CONCLUSION

¶ 17 The matter is remanded with directions to give Appellant the opportunity to have a meaningful restitution hearing or to expressly waive that right.

CONCURRING: NOEL FIDEL, Presiding Judge, SHELDON H. WEISBERG, Judge