NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DEPARTMENT OF CHILD SAFETY, *Petitioner*,

*v.*

THE HONORABLE SALLY DUNCAN, Judge of the SUPERIOR COURT
OF THE STATE OF ARIZONA, in and for the County of MARICOPA,
*Respondent Judge,*

JUAN P. and S.P., *Real Parties in Interest.*

No. 1 CA-SA 17-0150
FILED 7-11-2017

Petition for Special Action from the Superior Court in Maricopa County
No. JD29446
The Honorable Sally Schneider Duncan, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Petitioner*

Maricopa County Public Advocate's Office, Mesa
By David C. Lieb
*Counsel for Real Party in Interest Juan P.*

Clark Jones
*Counsel for Real Party in Interest S.P.*

---

**MEMORANDUM DECISION**

Chief Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Randall M. Howe joined.

---

**T H U M M A**, Judge:

¶1          Accepting special action jurisdiction, this court grants relief, vacating the superior court's May 30, 2017 order dismissing the dependency and related rulings, because that court lacked jurisdiction to enter those orders given the pendency of a prior appeal.

### FACTS AND PROCEDURAL HISTORY

¶2          S.P. was born in the United States in May 2011. S.P.'s father Juan P. (Father) is a citizen of Mexico who, given a felony conviction, was deported in 2012 and is unable to return to the United States. For a time, S.P. lived with Father. In May 2013, however, Father returned the child to S.P.'s mother. Father then lost contact with S.P. and made no further attempts to locate the child until mid-2015.

¶3          At some point, S.P. and his mother came to Arizona. In November 2014, the Department of Child Safety (DCS) took S.P. into care, alleging neglect, substance abuse and mental illness by mother[1] and neglect by Father. S.P. was found dependent in February 2015, when parents failed to appear. By July 2015, given parent's lack of participation, the superior court accelerated a permanency planning hearing and changed the case plan to severance and adoption. In August 2015, DCS moved to terminate parental rights, alleging Father abandoned S.P.

---

[1] Mother has not participated in the dependency and is not involved in this special action.

¶4          In April 2015, Father learned that S.P. was in DCS custody. In June and September 2015, Father contacted DCS. Father first appeared in this proceeding in October 2015 and the superior court set a severance trial for April 2016. Shortly before trial was to start, Father filed a motion asking that S.P. be placed in his physical custody. After an evidentiary hearing, the superior court denied the motion. That court's September 20, 2016 ruling found "there would be a substantial risk of harm to [S.P.'s] mental or emotional health based on an immediate return of the child to the [F]ather." The court noted its findings were based

> largely on Father's testimony and on [a] bonding assessment, observing that Father [had] not seen S.P. for almost four years, [Father and S.P.] do not speak the same language, S.P. is very closely bonded to his placement, and S.P. would likely struggle during the transition to a foreign country with a near stranger. Indeed, Father conceded while testifying that "it would be emotionally harmful to [S.P.] to be removed from the . . . place where he considers his home, and return him to [Father's] physical custody."

On October 6, 2016, after additional briefing but on the same evidentiary record, the superior court reversed its ruling and granted Father's motion for change of physical custody.

¶5          DCS and S.P. appealed from the superior court's order granting Father's motion for change of physical custody. On May 16, 2017, this court vacated the superior court's order, directing that on remand the superior court "shall not order S.P. to be moved out of Arizona or placed in the hands of Mexican authorities until the completion of either a new evidentiary hearing on [Father's motion] . . . after DCS has been able to complete its discovery and studies or the severance trial."

¶6          A great deal of superior court activity followed, culminating in a May 30, 2017 hearing. At that hearing, although no testimony was provided, the superior court considered "a second psychological evaluation" for Father and heard argument. The court then dismissed the November 2014 dependency petition and ordered that S.P. be delivered immediately to the office of the Mexican Consulate in Phoenix, to then be returned to Father in Mexico. On June 1, 2017, the superior court denied DCS' motions for reconsideration and stay. DCS filed this special action on June 2, 2017 and this court granted DCS' motion for stay later that same

day. Additional briefs, appendices and motions have been filed with, and considered by, this court.[2]

¶7　　　　In the appeal resulting in the May 16, 2017 decision, no party filed a petition for review with the Arizona Supreme Court. Accordingly, and given the passage of time, the mandate in that appeal issued on June 21, 2017. *See* Ariz. R.P. Juv. Ct. 107(h)(2017).[3]

## DISCUSSION

¶8　　　　DCS claims the superior court acted contrary to this court's May 16, 2017 decision. Special action jurisdiction is appropriate when a party has no "equally plain, speedy and adequate remedy by appeal." Ariz. R.P. Spec. Act. 1(a). Although discretionary, special action jurisdiction is appropriate to address "purely legal questions." *Martin v. Reinstein*, 195 Ariz. 293, 301 ¶ 9 (1999). As stated many times in an analogous context, "[t]he appropriate method for seeking review of a trial court's judgment on remand pursuant to this Court's specific directions is through special action." *Halt v. Gama ex rel. County of Maricopa*, 238 Ariz. 352, 353 ¶ 2 (App. 2015) (citations omitted). Similarly, special action jurisdiction is proper when an appellate court is asked to address "the care and custody of a very young child." *Bechtel v. Rose In and For Maricopa County*, 150 Ariz. 68, 71 (1986); *accord Dep't of Child Safety v. Beene*, 235 Ariz. 300, 303 ¶ 6 (App. 2014). Accordingly, in its discretion, this court accepts special action jurisdiction.

---

[2] The court resolves the parties' pending motions as follows: (1) S.P.'s June 13, 2017 motion for extension of time to file response is granted; (2) DCS' June 28, 2017 motion to accept reply as filed is granted; (3) Juan P.'s June 30, 2017 motion to strike DCS' June 28, 2017 supplement is denied; and (4) DCS' July 7, 2017 second emergency motion for stay is denied. In doing so, the court denies without prejudice DCS' challenges arising from a June 14, 2017 status hearing, including the superior court's order that S.P. be at the courthouse for all future hearings and the request that counsel (along with a guardian ad litem) be appointed to represent six-year-old S.P., and denies DCS' request to delay the effective date of any future order changing physical custody of S.P. Any party wishing to challenge such orders may seek to do so separately and any request for stay of any future order is premature.

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

¶9        In the prior appeal, this court's May 16, 2017 decision concluded the superior court erred in ordering S.P. be returned to Father's custody or to visit Father in Mexico "pending either a more complete evidentiary hearing on the motion to change custody to Father or the trial on the severance" filing. Mem. Dec. ¶ 1. That decision prohibited the superior court from "order[ing] S.P. to be moved out of Arizona or placed in the hands of Mexican authorities until the completion of either a new evidentiary hearing on a . . . [motion to change physical custody] after DCS has been able to complete its discovery and studies or the severance trial." *Id.* at ¶ 20. The parties here spend considerable effort addressing whether, by dismissing the dependency without an evidentiary hearing or severance trial, the superior court acted contrary to this court's directives in the appeal. But a broader jurisdictional issue obviates the need to resolve that issue here.

¶10        "An appellate court retains jurisdiction of an appeal until it issues the mandate." Ariz. R. Civ. App. P. 24(a). When an appeal "has been perfected, the trial court loses all jurisdiction except for actions in furtherance of the appeal." *In re Estate of Killen*, 188 Ariz. 569, 572 (App. 1996). Stated differently, until the mandate issues after a proper appeal, the superior court "may not render any decision that would defeat or usurp an appellate court's jurisdiction of a case on appeal," recognizing a superior court can take action that does not "negate the decision in a pending appeal or frustrate the appeal process." *State v. O'Connor*, 171 Ariz. 19, 21, 22 (App. 1992).

¶11        As applied, the superior court's May 30, 2017 order dismissing the dependency petition negated this court's May 16, 2017 decision. Moreover, the superior court's May 30, 2017 order issued before the mandate issued in the appeal, which revested jurisdiction in the superior court.[4] As a result, on May 30, 2017, the superior court lacked jurisdiction to dismiss the dependency petition, which would have mooted this court's May 16, 2017 decision. Accordingly, the superior court's May 30, 2017 orders dismissing the November 2014 dependency petition and ordering that S.P. be delivered immediately to the office of the Mexican Consulate in Phoenix for return to Father in Mexico are vacated for lack of jurisdiction.

---

[4] The superior court's May 30, 2017 order issued before the 30-day deadline for the parties to request that the Arizona Supreme Court review this court's May 16, 2017 decision. *See* Ariz. R.P. Juv. Ct. 107(A).

**¶12** The mandate in the prior appeal has now issued, meaning jurisdiction has now been revested in the superior court. This court does not address the merits of Father's motion for change of physical custody or DCS' motion to terminate, which will be resolved following an evidentiary hearing as directed in this court's May 16, 2017 decision. Accordingly, this court need not finally resolve the various other issues the parties seek to press in this special action.[5]

**¶13** Accepting special action jurisdiction, this court grants relief, vacating the superior court's May 30, 2017 order dismissing the dependency and related rulings, because that court lacked jurisdiction to enter those orders given the pendency of the prior appeal.



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[5] It does, however, appear that the sole new evidence provided to the superior court at the May 30, 2017 hearing was a five-page, unsigned April 28, 2017 evaluation of Father by Carlos J. Vega, Psy.D. The document states it was based on (1) "Review of Reports Available" (which the superior court likely received at prior hearings); (2) a "Mental Status Examination" (which is not further discussed); (3) a "Sentence Completion Test" by, and "Clinical Interview" of, Father (which were generally viewed as favorable to Father) and (4) a "Child Abuse Potential Inventory" (with Father's responses noted as showing "significant elevation on the Faking Good & Lie Index" and "on the Rigidity Factor Scale"). The document concludes that, among other things, the author "was left with the distinct impression that after 'six or seven visits' [Father] would likely relinquish his parental rights." Although likely relevant to at least some issues to be addressed following this court's May 16, 2017 decision, this document would not appear to be dispositive of any of those issues, particularly without testimony from Dr. Vega.