848 P.2d 882

**STATE of Arizona, Appellee,**

v.

**Charles M. FREEMAN, Appellant.**

**No. 1 CA–CR 91–1776.**

Court of Appeals of Arizona,
Division 1, Department B.

March 18, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, Daniel J. Kiley, Asst. Atty. Gen., Phoenix, for appellee.

David N. Howarth, Navajo County Public Defender, Holbrook, for appellant.

## OPINION

GRANT, Judge.

The issue raised in this appeal is whether the trial court erred by not permitting appellant, Charles Michael Freeman ("defendant"), to keep merchandise that he admitted stealing from various credit merchants, subject to his payment of restitution, if the merchants did not reclaim it. For reasons stated below, we find that the trial court did not err. However, because we find the order of restitution imposed in the plea agreement in this case is improper, for reasons also stated below we vacate that order and remand to the trial court for reimposition of restitution only.

### FACTS AND PROCEDURAL BACKGROUND

Between October 15, 1990, and May 10, 1991, while incarcerated in a Department of Corrections prison facility in Winslow, Arizona, defendant managed to acquire between eight and ten credit cards or accounts by making fraudulent misrepresentations to various companies including various banks and merchants such as Sears and J.C. Penney's. To obtain the cards, defendant submitted credit applications using his father's name (which differs from his only as to the middle name) and his father's social security number and date of birth. As a mailing address, defendant used only the street address of the prison facility. With the cards or accounts so acquired, defendant then purchased mail-order merchandise, the total property value of which was in the vicinity of $3,500. When confronted in May of 1991 by a Department of Corrections officer investigating his activities, defendant admitted his fraud. Thereafter, defendant was charged by indictment with one count of Theft, a class 3 felony, and one count of Fraudulent Schemes and Artifices, a class 2 felony.

On September 11, 1991, defendant pleaded guilty to one count of Theft, a class 3 felony, non-dangerous and non-repetitive, in exchange for which the state agreed to drop the second count. At the change of plea hearing, on September 11, the trial judge accepted defendant's plea, finding that the plea agreement was entered into knowingly, intelligently and voluntarily and that there was a factual basis for it.

The plea agreement contained no stipulation regarding the sentence to be imposed; however, it did contain the following stipulation regarding restitution:

The state has contacted the victims and upon investigation determines that restitution which is due or owing restitution [sic] shall not exceed $3,800.00.

If any merchandise seized in the investigation is returned to the victim(s), defendant shall be entitled to credit toward restitution in the amount of the value of that merchandise.

At the sentencing hearing on October 7, 1991, the trial court sentenced defendant to the presumptive term of 5 years in the Department of Corrections. The trial court ordered that the sentence run consecutively to the sentence defendant was then serving.

The transcript of the sentencing hearing shows that the following discussions took place regarding restitution. In addressing the trial court regarding the appropriate sentence to be imposed, defense counsel prefaced his remarks by stating:

The Court will note from the plea agreement that if [the companies] will take the merchandise back that Mr. Freeman is entitled to credit. If they will not take the merchandise back, then he is going to have to pay for the merchandise and he should be entitled to the merchandise.

\* \* \* \* \* \*

Mr. Freeman would like to have the merchandise because he ordered it for family purposes. He would like to have the opportunity to continue to pay on the accounts ...

On the other hand, if he is not allowed that freedom, then that merchandise should go back. Some of it I am told is

in the original boxes sitting in storage at the Department of Corrections and it should be returned to the merchants for credit on the accounts.

Prior to the trial court's imposing sentence, the county attorney explained that, after entry of the plea agreement, his office had sent letters to each of the victims identified in the presentence report advising them of defendant's plea, the time and date of sentencing and the amount of restitution his office had identified as owing to them. According to the county attorney, these letters also advised each company as follows:

Please note that you may have returned to you any merchandise which our investigation recovered, but restitution will be reduced by the current value of any merchandise returned to you. You must advise our office if you wish to have any merchandise returned to you in lieu of an order of restitution for the sale cost of the items.

The county attorney informed the trial court that his office had not received responses from any of the victims asking that the merchandise be returned to them and that he therefore "presumed" that all of them preferred an order of restitution to return of the actual items and that that was "probably related to depreciation in the property." To this the trial court replied, "I guess they have that choice."

The trial court then pronounced sentence and ordered defendant to pay restitution in the amount of $3,529.13, after which the following exchange took place between defense counsel and the trial court:

[Defense counsel]: Your Honor, we would request a release of the merchandise to be returned from the Department of Corrections if Mr. Freeman is going to pay for it.

The Court: I would deny that request. There are too many variables, too much loss of value, too much loss to the companies, the unlikelihood of them being repaid. I don't think there is a chance in the world that he will ever be out of prison for more than a short time.

[Defense counsel]: We request then that the Department of Corrections be ordered to hold that property in storage pending the ultimate payment of restitution in this case.

The Court: I will order it delivered back if they will take it, with credit for any value they might place on it.

[Defense counsel]: If one of these merchants chooses not to take it?

The Court: I will order it to the Red Cross or something. He is not going to gain equity by his criminal acts.

The sentencing order contained in the trial court's minute entry of October 7, 1991, made no reference to the stipulation regarding restitution included in the plea agreement and discussed at the sentencing hearing, except to note that restitution in the total amount of $3,529.13 was ordered.

On October 11, 1991, defendant filed a Motion to Clarify, Or, In the Alternative, to Reconsider Sentencing Order in which the defendant contested the trial court's decision to deny his requests to keep the merchandise. The thrust of defendant's motion was that any goods not claimed by the various merchants should be delivered to him upon his payment of restitution. However, defendant also argued that "a reasonable alternative to the present Order would be to apply the procedure of A.R.S. sec. 13–3941 so as to notify the victims to claim their property, thereby allowing Defendant credit against the restitution amount for all the property now held that is capable of being returned to the victim." Defendant claimed that "[s]uch was the intention of the parties hereto as stated in the Plea Agreement."

On October 28, 1991, the trial court issued a Minute Entry Order in which it added the following language to its Sentencing Order of October 7, 1991:

If none of the victims indicates willingness to accept return of property, the ASPC–Winslow shall give the property to the Red Cross.

Defendant timely appealed, challenging only the trial court's order with respect to restitution. On appeal, defendant's principal contention is that, if any of the victims

do not reclaim their property, he should be entitled to keep it, because, if he pays restitution for it, it belongs to him, "much like the case of any other person ordered to pay his bills." Defendant also raises two other arguments. One is that the trial court's actions really constitute an impermissible "forfeiture" of his property. The other is that the trial court abused its discretion by awarding the property to "third parties," i.e., the Red Cross, and not complying with the dictates of Ariz.Rev.Stat. Ann. ("A.R.S.") section 13–3941(C). Defendant also preserves the argument that credit against restitution should be given him for any items of stolen property recovered.

## DISCUSSION

■ At the outset, we reject both defendant's "forfeiture" and "entitlement" arguments. As we have often noted, the payment of restitution to victims is mandatory under our sentencing system. *See* A.R.S. §§ 13–603(C) and 13–804; *State v. Steffey*, 173 Ariz. 90, 839 P.2d 1135 (App. 1992). The objectives of mandatory restitution are both reparative and rehabilitative in nature: to make the victim whole, *State v. Howard*, 163 Ariz. 47, 51, 785 P.2d 1235, 1239 (App.1989), and to make the offender "recognize the specific consequences of his criminal activity and accept responsibility for those consequences," *State v. Merrill*, 136 Ariz. 300, 301, 665 P.2d 1022, 1023 (App.1983). Contrary to defendant's contentions, therefore, payment of restitution is neither intended to, nor does, create valid legal title in the stolen goods. That would effectively defeat the rehabilitative goal of mandatory restitution. Consequently, by paying restitution to the various credit merchants who are the victims of his fraud, defendant is neither "paying" for the goods he stole nor acquiring legal title to the goods. The trial court, therefore, did not err in denying defendant's requests to keep any property unclaimed by his victims. Nor does this case involve the impermissible forfeiture of defendant's property pursuant to A.R.S. section 13–4301 *et seq.*, as defendant claims, since the goods in question never belonged to defendant.

■ Nonetheless, we find that the order of restitution in this case is defective because it fails to give defendant credit toward restitution for the value of any of the merchandise recovered and returnable to victims. The issue is not, as defendant would have it, who gets to keep any unclaimed recovered property, but rather who gets credit for recovered property, claimed or unclaimed.

This court has held that restitution must bear a reasonable relationship to a victim's loss. *State v. Scroggins*, 168 Ariz. 8, 9, 810 P.2d 631, 632 (App.1991). Furthermore, as defendant rightly argues, the purpose of restitution is not to punish. *See, e.g., Howard*, 163 Ariz. at 51, 785 P.2d at 1239. Thus on previous occasions we have held that payments beyond those required to compensate a victim or payments that would constitute a "windfall" to a victim should be avoided because they are not in keeping with the legislature's purpose in mandating restitution. *See Steffey*, 173 Ariz. at 94, 839 P.2d at 1139; *Howard*, 163 Ariz. at 51, 785 P.2d at 1239; *State v. Iniguez*, 169 Ariz. 533, 535, 821 P.2d 194, 197 (App.1991).

In *State v. Ferguson*, we held that the amount of restitution for stolen property is to be reduced by the value of items recovered by police and returned to victims. 165 Ariz. 275, 798 P.2d 413 (App.1990). We hold that credit against restitution for the value of recovered stolen property is not dependent on whether the victims choose to accept return of the property. Thus we hold that the trial court erred by not crediting defendant's restitution amount with the value of any items of stolen property recovered in this case. The order of restitution is therefore vacated and this case is remanded to the trial court for an evidentiary hearing to determine the appropriate amount of restitution to be imposed. On remand, the trial court is to determine which items of merchandise stolen by defendant have either actually been recovered or are recoverable and to obtain an accurate inventory of all such merchandise.

We note that the record contains references to items "ordered" by defendant that are purportedly sitting in boxes at a Department of Corrections facility; a list of these items must be obtained by the court. The court must determine the value of any such items, recovered or recoverable, and defendant must be given credit against restitution for their value, regardless of whether the victims ask for their return. The victims may present evidence as to the value of the merchandise and, consequently, the extent of their loss.

 The parties' efforts in this case have focused almost exclusively on the issue of the disposition of any stolen merchandise that remains unclaimed by the victims. As we stated above, defendant has no legal title to such property; therefore, he has no standing to contest its disposition except as it affects the amount of restitution imposed. The plea agreement does not provide for unclaimed property to be given to the Red Cross, and neither the trial court nor the state cites us to any authority for awarding the unclaimed property in this case to third parties. We note that A.R.S. section 13–3942, dealing with the disposition of unclaimed stolen or embezzled property, provides as follows:

> If property stolen or embezzled is not claimed by the owner within six months after the conviction of the person for such theft or embezzlement, the magistrate or other officer having it in custody shall, upon payment of the necessary expenses incurred in its preservation, deliver it to the county treasurer, who shall sell such property in the same manner as personal property is sold under execution in a civil action, and the proceeds shall be paid into the county treasury.

The statute does not permit the trial court's allocation of any unclaimed items to the Red Cross. That portion of the trial court's sentencing order allocating any unclaimed property to the Red Cross is also vacated and the appropriate parties are put on notice that any unclaimed goods are to be disposed of pursuant to A.R.S. section 13–3942.

We vacate the restitution order and remand for proceedings consistent with this decision. We have also searched the record for fundamental error pursuant to A.R.S. section 13–4035 and have found none. Accordingly, defendant's conviction and the remainder of his sentence are affirmed.

JACOBSON, P.J., and WEISBERG, J., concur.