239 P.3d 749

**STATE of Arizona, Appellee,**

v.

**Sherman E. UNKEFER, Appellant.**

**No. 1 CA–CR 09–0750.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 21, 2010.

Richard M. Romley, Acting Maricopa County Attorney and Davina Bressler, Deputy County Attorney, Phoenix, Attorneys for Appellee.

Perkins, Coie, Brown & Bain PA By M. Bridget Minder and Joel W. Nomkin and

Lee D. Stein, Phoenix, Attorneys for Appellant.

## OPINION

NORRIS, Judge.

¶ 1 Sherman E. Unkefer appeals the superior court's denial of his motion to vacate a criminal restitution order ("CRO") entered by the court 12 years after he had completed his prison sentence. On appeal, he argues the 12-year delay by itself violated Arizona Revised Statutes ("A.R.S.") section 13–805 (2010). As relevant here, this statute states a CRO "shall" be entered "at the time" the defendant completes his or her period of probation or sentence (collectively, "criminal sentence"). In State v. Pinto, 179 Ariz. 593, 596, 880 P.2d 1139, 1142 (App.1994), we held this language was "advisory," not jurisdictional, and a trial court could consider a petition for entry of what was then called a civil judgment if "filed within a reasonable time" after the defendant had completed his or her criminal sentence. Applying our holding in Pinto, we reject Unkefer's argument the 12-year gap by itself barred the court from entering the CRO. We nevertheless vacate the superior court's denial of his motion because the court did not consider whether, in light of the purpose of restitution, the legislature's intent in enacting A.R.S. § 13–805, and the circumstances of this case, the 12-year delay was reasonable.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Unkefer was the founder, president, chief executive officer, chairman of the board of directors, and largest shareholder of North American Coin and Currency ("NAC"), a buyer and seller of precious metals. The State indicted Unkefer on October 23, 1986, on seven counts of fraudulent schemes and artifices, a class 2 felony; one count of attempted fraudulent schemes and artifices, a class 3 felony; and two counts of theft, a class 3 felony. The charges stemmed from Unkefer's trading activities on behalf of NAC from January 1980 to September 1982. Pursuant to a plea agreement, on July 25, 1988, Unkefer pled guilty to one count of fraudulent schemes and artifices.

¶ 3 The plea agreement capped the amount of restitution Unkefer could be ordered to pay at $7.5 million and entitled him to "an offset of the restitution amount for funds collected to date and any collected in the future from third parties." During the change of plea hearing, the superior court told Unkefer he would need to make an "affirmative request" to receive offsets and offsets would not be "automatic." Unkefer's attorney agreed, confirming Unkefer would have to provide "appropriate documentation and motions and proof to the Court's satisfaction that funds had been collected."

¶ 4 On November 18, 1988, the superior court sentenced Unkefer to ten years in prison. On June 20, 1989, without objection by Unkefer, the court ordered him to pay $7.5 million in restitution "as stated in the plea agreement." Unkefer was released from prison on May 15, 1996.

¶ 5 From 1996 to 2008, the case was largely dormant. On November 18, 2008, 12 years after Unkefer completed his prison sentence and 20 years to the day after the superior court sentenced Unkefer to prison, a superior court commissioner entered a $7,498,530 CRO against Unkefer.[1]

¶ 6 Unkefer eventually learned of the CRO and moved to vacate it, asserting the 12-year delay by itself rendered the CRO untimely under A.R.S. § 13–805[2] and Pinto. In re-

---

1. The CRO was for the unpaid balance of the $7.5 million restitution ordered by the court and ran in favor of the State and "certain victim(s)" as set forth in the court's November 18, 1988 order sentencing Unkefer to prison. The court's November 18, 1988 order did not, however, identify these victims. The record contains no information reflecting who sought entry of the CRO nor does it provide any information regarding why a CRO was not entered at the time Unkefer completed his sentence.

2. As relevant here, A.R.S. § 13–805(A) states as follows:

   The trial court shall retain jurisdiction of the case for purposes of modifying the manner in which court-ordered payments are made until paid in full or until the defendant's sentence expires. At the time the defendant completes the defendant's period of probation or the defendant's sentence, the court shall enter ...:

   ...

sponse, the State argued that because crime victims are entitled to restitution under Arizona law and the legislature enacted A.R.S. § 13–805 to assist victims in recovering restitution, the delay was immaterial. After briefing, the superior court denied the motion to vacate.[3] It held "the 'reasonable time' language in *Pinto*—like the language of the statute itself concerning timing of the criminal restitution order—is precatory. It is *dictum* that this Court has no authority to enforce." The court also held Unkefer bore the burden of proving any offsets because he had agreed to do so at the change of plea hearing. *See supra* ¶ 3. Unkefer timely appealed. We have jurisdiction pursuant to A.R.S. § 13–4033(A)(3) (2010).[4]

## DISCUSSION

### I. *Section 13–805 and* Pinto

¶ 7 On appeal Unkefer argues the superior court should have vacated the CRO because the 12–year delay by itself violated A.R.S. § 13–805 and *Pinto*'s standard of reasonableness.[5] We reject this argument as it focuses only on time and grants no importance to any consequences caused by the passage of time. Further, as we held in *Pinto*, the "at the time" language is advisory, not jurisdictional, and a trial court's failure to enter a CRO "at the time" a defendant completes his or her criminal sentence does not, by itself, invalidate a subsequently entered CRO.

2. A criminal restitution order in favor of each person entitled to restitution for the unpaid balance of any restitution ordered.

3. The superior court directed the State to amend the CRO to name the proper victims and restitution amounts owed to them—as requested by Unkefer—but rejected Unkefer's motion in all other respects.

4. Both Unkefer and the State assert jurisdiction is proper under A.R.S. § 12–2101 (2003), the jurisdictional statute generally applicable to non-criminal appeals. A CRO can be recorded and enforced like a civil judgment, A.R.S. § 13–805(C), but a CRO is not a civil judgment. This appeal is from a criminal case and is a criminal matter. Thus, jurisdiction exists under subsection (A)(3) of the jurisdictional statute applicable to criminal appeals by a defendant, A.R.S. § 13–4033.

¶ 8 As noted above, A.R.S. § 13–805 states a court "shall" enter a CRO "at the time" a defendant completes his or her criminal sentence. We were called to interpret this language in *Pinto*.

¶ 9 There, four defendants were each found guilty of a criminal offense, placed on probation, and ordered to pay restitution. *Pinto*, 179 Ariz. at 595, 880 P.2d at 1141. Under the predecessor version of the current statute, the trial court entered what was then known as a "civil judgment" after each defendant's term of probation had expired. *Id.* After examining the statutory language and the legislature's intent in enacting the statute—"to prescribe a procedure by which [crime] victims would receive their restitution at the earliest possible opportunity"—we rejected the defendants' argument the trial court had lost jurisdiction to enter the judgments. *Id.* at 595–96, 880 P.2d at 1141–42. We held the "at the time" wording was not jurisdictional but "advisory as to when the trial court is to act" and a trial court could consider a petition for entry of a civil judgment filed "within a reasonable time after" completion of the period of probation. *Id.* at 596, 880 P.2d at 1142. Although we declined to determine the "exact boundaries of reasonableness" under A.R.S. § 13–805 for entry of a civil judgment, we stated our "opinion ... should not be taken as a license for indiscriminate or egregious delay" and instructed petitions requesting civil judgments should be filed with the trial court "at the earliest possible opportunity."[6] *Id.*

5. We view Unkefer's argument as presenting an issue of law. Therefore, our review is de novo. *Mejak v. Granville*, 212 Ariz. 555, 557, ¶ 7, 136 P.3d 874, 876 (2006).

6. In *State v. Soriano* we reaffirmed *Pinto*'s "reasonable time" language in holding a trial court can designate an "open" criminal offense as a misdemeanor after a defendant has completed probation. 217 Ariz. 476, 480, ¶ 13, 176 P.3d 44, 48 (App.2008). The *Soriano* court stated "Division One held that 'a trial court may consider a petition for entry of civil judgment which is filed within a reasonable time after the period of probation is completed.'" *Id.* at 479–80, ¶ 12, 176 P.3d at 48 (quoting *Pinto*, 179 Ariz. at 596, 880 P.2d at 1142); *see also State v. Zaputil*, 220 Ariz. 425, 429, ¶ 17, 207 P.3d 678, 682 (App.2008) (trial court authorized to enter judgment for restitution under A.R.S. § 13–805(A)(1)).

¶ 10 Here, contrary to *Pinto's* instruction, the superior court was not asked to, nor did it, enter the CRO at the "earliest possible opportunity." Unkefer was rightly troubled by the 12–year delay, and so are we. But having said this, we nevertheless disagree with Unkefer the 12–year delay constituted a per se violation of A.R.S. § 13–805 as construed in *Pinto*. Unkefer's per se argument is simply another way of asserting the wording of A.R.S. § 13–805 should be strictly construed as depriving the court of "jurisdiction" to enter a CRO after a defendant has completed his or her criminal sentence. Although a 12–year delay is worse than, say, a one-year delay, entry of a CRO in either case violates the statutory language. The hard issue presented in either case is whether violation of the statutory deadline bars entry of or invalidates a CRO; the length of the delay vis-à-vis this issue is not dispositive.

¶ 11 Like other statutes, A.R.S. § 13–805 states a time for the performance of an official duty (entry of a CRO) but fails to specify any consequence if that duty is not timely performed. Whether the legislature intended the language of such a statute to be mandatory or "directory," that is, giving "mere direction or instruction of no obligatory force, and involving no invalidating consequence for its disregard" presents an issue of statutory construction. *Dep't of Revenue v. S. Union Gas Co.*, 119 Ariz. 512, 514, 582 P.2d 158, 160 (1978) (quoting Black's Law Dictionary 547 (4th ed.1968)); *see also Way v. State*, 205 Ariz. 149, 152–54, ¶¶ 9–15, 67 P.3d 1232, 1235–37 (App.2003) (finding statute directory and failure of police to follow it did not defeat jurisdiction). To decide this issue, a court has to consider the effect and consequences of alternative constructions. *S. Union Gas Co.*, 119 Ariz. at 514, 582 P.2d at 160. "Language, mandatory in form, may be deemed directory when the legislative purpose can best be carried out by such construction." *Id.; see also Verma v. Stuhr*, 223 Ariz. 144, 153, ¶ 35, 221 P.3d 23, 32 (App. 2009) (same).

¶ 12 In *Pinto*, we essentially followed this approach in interpreting the "at the time" wording and holding it was advisory and not jurisdictional. Accordingly, noncompliance with the "at the time" language of A.R.S. § 13–805, whether 12 years or one year, does not by itself bar entry of or invalidate an otherwise proper CRO.

¶ 13 Unkefer's per se argument also flies in the face of the "reasonable time" test we established in *Pinto*. In differing contexts, the law measures the legitimacy or propriety of an act by assessing its reasonableness.[7] Making this call requires the exercise of judgment informed by facts. Assessing reasonableness by only counting years, months, or days (which is the only factor Unkefer suggests) without considering all other relevant circumstances would not lead to informed decision making. Moreover, assessing reasonableness by looking at only one factor, time, and not at any consequences caused by the passage of time, *see infra* ¶ 17, would turn the reasonableness standard we established in *Pinto* into a straitjacket.

¶ 14 This does not mean, as the State argues, a trial court can enter a CRO at any time, regardless of delay.[8] Although the legislature enacted A.R.S. § 13–805 to help crime victims recover restitution, the "at the

---

7. See, for example, *State v. Bocharski*, 200 Ariz. 50, 62, ¶ 61, 22 P.3d 43, 55 (2001) (unique facts of each case determine what is reasonably necessary for indigent to present defense); *State v. Carroll*, 111 Ariz. 216, 219, 526 P.2d 1238, 1241 (1974) (test of constitutionality of search is whether search is reasonable under the circumstances); *In re Frank H.*, 193 Ariz. 433, 437, ¶ 16, 973 P.2d 1194, 1198 (App.1998) (restitution claim deadlines set by juvenile court must be reasonable under the circumstances).

8. As originally enacted, a judgment entered pursuant to A.R.S. § 13–805 could be "enforced and renewed as any civil judgment." 1986 Ariz. Sess. Laws, ch. 248, § 7 (2d Reg.Sess.). In 1995, the legislature amended the statute to specify a CRO expired five years after signed by the court unless renewed as any civil judgment. 1995 Ariz. Sess. Laws, ch. 188, § 3 (1st Reg. Sess.). In 1999, the legislature amended the statute to delete the five-year expiration period. 1999 Ariz. Sess. Laws, ch. 106, § 2 (1st Reg. Sess.). As amended in 1999, a CRO does not expire until paid in full and does not have to be renewed. The State appears to argue repeal of the five-year renewal provision points to the legislature's intent to have no time limit for entering a CRO. We disagree. The 1999 amendment left intact the "at the time" wording of the statute.

time" language has meaning and force. As our supreme court has explained: "To hold that a provision is directory rather than mandatory, does not mean it is optional to be ignored at will. Both mandatory and directory provisions of the legislature are meant to be followed." *S. Union Gas Co.*, 119 Ariz. at 514, 582 P.2d at 160.

¶ 15 Furthermore, we cannot square the State's argument with a fundamental principle of statutory construction. The legislature is presumed to be aware of court decisions interpreting statutory language and to approve those decisions when it retains the language. *Fisher v. Kaufman*, 201 Ariz. 500, 502, ¶ 12, 38 P.3d 38, 40 (App.2001). The legislature amended A.R.S. § 13–805 three times after we decided *Pinto* but never touched the language we construed.

¶ 16 To sum up: We reject Unkefer's argument the superior court should have vacated the CRO because the 12–year delay by itself was unreasonable under A.R.S. § 13–805 as construed in *Pinto*. Nevertheless, the superior court should not have denied Unkefer's motion to vacate without further analysis of reasonableness. Because it believed *Pinto*'s construction of the "at the time" provision of the statute was "dictum," the superior court did not determine whether the CRO had been entered "within a reasonable time" after Unkefer had completed his sentence. Our construction of A.R.S. § 13–805 and its "at the time" wording, however, was central to the issues raised in *Pinto* and was not dictum. *State v. Proctor*, 196 Ariz. 557, 563, ¶ 21, 2 P.3d 647, 653 (App.1998) (court's resolution of issue was necessary to decision and thus not dictum); *cf. Town of Chino Valley v. City of Prescott*, 131 Ariz. 78, 81, 638 P.2d 1324, 1327 (1981) (court's statement on question not necessarily involved in the case being decided is dictum), *appeal dismissed*, 457 U.S. 1101, 102 S.Ct. 2897, 73 L.Ed.2d 1310 (1982). Accordingly, we remand this matter to the superior court to determine whether the CRO was entered "within a reasonable time."

## II. Reasonableness

¶ 17 Arizona courts have not discussed what factors a trial court should consider in deciding what is a reasonable time under *Pinto*. Based on our review of analogous case law involving restitution from other jurisdictions and Arizona case law involving the doctrine of laches and declaratory statutes, we hold a trial court should consider the totality of the circumstances which would include not only the length of the delay, but also the reason for the delay, the parties responsible for the delay, the effect of the delay, any demonstrated prejudice suffered by the defendant, and, as we explain in Part III, whether any prejudice can be mitigated or cured by, for example, shifting the burden of proving offsets to restitution to the State. Further, as we explain in ¶ 24, the court should consider these factors in light of the purpose of restitution and the legislature's intent in enacting A.R.S. § 13–805.

¶ 18 In *Wisconsin v. Ziegler*, the Wisconsin Court of Appeals reversed a judgment setting the amount of restitution because the judgment was entered, in violation of various statutory deadlines, 14 years after restitution was originally ordered. 280 Wis.2d 860, 695 N.W.2d 895, 901, ¶ 20 (App.2005). Similar to the approach we took in *Pinto*, the court first held the deadlines were directory, not mandatory. *Id.* at 899–900, ¶ 14. The court went on to explain a trial court could order restitution after expiration of the statutory deadlines as long as it applied a test that balanced the "length and reasons for the delay against the injury, harm or prejudice to the defendant resulting from the delay." *Id.* at 900, ¶ 18. In applying this balancing test to the 14–year delay between the defendant's sentencing and the restitution hearing, the court stated the longer the gap between sentencing and the restitution hearing, "the more inherent the prejudice to the defendant," noting that by the time the trial court finally held the restitution hearing, "much of the documentation concerning the victim's damages had been lost or destroyed"; the victim "could not exactly recall the origin of all his [damage] calculations"; and the "passage of so many years made it far more difficult for [the defendant] to dispute any of the claimed damages." *Id.* at 901, ¶ 19.

¶ 19 In *Kansas v. Bryant*, the court sentenced the defendant and ordered restitution but postponed determination of the amount

of restitution for 30 days. 37 Kan.App.2d 924, 163 P.3d 325, 327 (2007). Not until six months later, however, did the court establish the restitution amount. *Id.* On appeal the Kansas Court of Appeals rejected the defendant's argument the trial court lacked jurisdiction to award restitution because it did not do so within 30 days of sentencing as it had initially ordered. *Id.* at 328. The court explained legitimate reasons justified the delay (medical leave for the prosecutor and change of counsel for the defendant) and the delay had not prejudiced the defendant. *Id.*

¶ 20 Under federal law, a district court may determine a victim's losses for purposes of restitution but must do so on a date "not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5) (2006). The United States Supreme Court recently held a district court's failure to impose restitution within the 90–day deadline did not preclude the court from ordering restitution. *Dolan v. United States,* — U.S. —, 130 S.Ct. 2533, 2539, 177 L.Ed.2d 108 (2010). The Court acknowledged, however, a reviewing court could consider whether the delay had prejudiced the defendant "perhaps by depriving him of evidence to rebut the claimed restitution amount," as well as the reason for the delay and the party responsible for "its cause, *i.e.,* whether the Government or the victim." *Id.* at 2542.

¶ 21 The factors considered in the foregoing cases dovetail with the factors Arizona courts generally consider under the equitable doctrine of laches. Although we do not suggest a defendant can rely on this doctrine to object to entry of a CRO,[9] the doctrine provides useful guidance in determining when delay becomes unreasonable.

¶ 22 "Laches will generally bar a claim when the delay [in filing suit] is unreasonable and results in prejudice to the opposing party." *Sotomayor v. Burns,* 199 Ariz. 81, 82–83, ¶ 6, 13 P.3d 1198, 1199–1200 (2000). Delay alone is not sufficient for a laches defense. *Id.* at 83, ¶ 8, 13 P.3d at 1200.

When determining whether laches should preclude a claim, a court considers all factors, including not only the length of the delay, but also the magnitude of the problem at issue. *League of Ariz. Cities and Towns v. Martin,* 219 Ariz. 556, 560, ¶ 13, 201 P.3d 517, 521 (2009).

¶ 23 Finally, we note delay by itself does not equate to prejudice when a governmental entity delays in performing an official act within the time specified in a statute deemed to be directory. The critical inquiry concerns whether the party claiming the delay caused prejudice actually suffered any prejudice. *See S. Union Gas Co.,* 119 Ariz. at 514, 582 P.2d at 160 (violation of directory provision that superior court shall hear an appeal within 90 days; "violation of this ninety-day provision, without more, such as a showing that the opposing party has suffered substantial detriment, is not sufficient"); *Forino v. Ariz. Dep't of Transp.,* 191 Ariz. 77, 81, 952 P.2d 315, 319 (App.1997) (delayed hearing under directory statute did not cause prejudice).

¶ 24 The factors discussed above are not exclusive. Other factors may be relevant in determining whether a CRO entered after the defendant completes his or her criminal sentence falls within *Pinto's* "boundaries of reasonableness." We emphasize a defendant must do much more than just claim he or she has suffered prejudice; a defendant bears the burden of proving actual prejudice. Further, in determining reasonableness, a trial court must keep in mind both the purpose of restitution—*to make the victim whole*—and the legislature's intent in enacting A.R.S. § 13–805—*to assist victims in obtaining prompt restitution.* Therefore, on remand the superior court should evaluate these factors and any other relevant factors raised by the parties in considering Unkefer's motion to vacate the CRO.[10]

### III. Offset Burden

¶ 25 Finally, because of the delay, Unkefer argues the burden of proving offsets (funds

---

9. Neither laches nor estoppel "can be asserted to gain rights against the public or to defeat the public interest." *Maricopa Cnty. v. Cities and Towns of Avondale,* 12 Ariz.App. 109, 113, 467 P.2d 949, 953 (1970).

10. Even if a CRO is not entered, victims have other mechanisms to recover court-ordered restitution. See, for example, A.R.S. § 13–806 (2010) (restitution lien); A.R.S. § 13–810(B) (2010) (order to show cause why defendant should not be

collected from third parties) against the restitution amount should be shifted to the State.[11] We decline to decide this issue.[12]

■ ¶ 26 Whether the burden should be shifted to the State is an issue that can only be addressed after the superior court has considered whether the CRO was entered within a reasonable time. As discussed, the superior court will need to consider whether the 12–year delay actually prejudiced Unkefer. As part of that determination, the court should also consider whether any prejudice can be mitigated or cured by, for example, shifting the burden of proving offsets to the State. The federal restitution statute, which empowers a district court at sentencing to choose which party should bear the burden for various restitution matters "as justice requires,"[13] is a helpful guide.[14]

## CONCLUSION

¶ 27 For the reasons stated above, we reverse the superior court's ruling denying Un-

kefer's motion to vacate the CRO. We remand this matter to the superior court to determine whether the CRO was entered within a reasonable time and for further proceedings consistent with this opinion.

CONCURRING: DONN KESSLER, Acting Presiding Judge and PATRICIA A. OROZCO, Judge.

held in contempt for failing to pay restitution); and A.R.S. § 13–812 (2010) (entry of writ of criminal garnishment following order to show cause hearing).

11. In his briefing on appeal, Unkefer suggests he did not initially agree it was his responsibility to prove offsets. We disagree. *See supra* ¶ 3.

12. The current version of A.R.S. § 13–804 (2010) states:

If a victim has received reimbursement for the victim's economic loss from an insurance company, a crime victim compensation program funded pursuant to § 41–2407 or any other entity, the court shall order the defendant to pay the restitution to that entity. If a victim has received only partial reimbursement for the victim's economic loss, the court shall order the defendant to pay restitution first to the victim and then to the entity that partially reimbursed the victim.

This language was added to § 13–804 after Unkefer committed his offenses and after he was sentenced. 1996 Ariz. Sess. Laws, ch. 117, § 1 (2d Reg.Sess.).

13. Under federal law, the Government must prove the victim's loss, but the burden of proving the defendant's financial circumstances is on the defendant. 18 U.S.C. § 3664(e). "The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires." *Id.* In

*United States v. Sheinbaum*, the federal court placed the burden of establishing an offset to restitution on the defendant because "the defendant should know the value of any compensation he has already provided to the victim in civil proceedings." 136 F.3d 443, 449 (5th Cir.1998). What "justice requires," however, may vary if the offsets were the result of third-party payments to victims rather than directly from the defendant.

14. We reject the State's argument Unkefer waived his right to any offsets because he did not object to the amount of restitution ($7.5 million) set by the superior court in 1989. *See supra* ¶ 4. First, the State failed to raise this argument until this appeal. Second, the State's argument conflicts with what it told the superior court during oral argument on Unkefer's motion to vacate: "So if there is evidence that the victims have received restitution or partial restitution then, of course, Mr. Unkefer would not owe that amount." Third, the State's argument is contrary to the plea agreement, *see supra* ¶ 3, and to the restitution order entered by the superior court. That order required Unkefer to pay $7.5 million "as restitution for his offense as stated in the plea agreement." In considering whether the 12–year delay prejudiced Unkefer, the court may consider whether he knew of any offsets but failed to report them to the court despite his agreement he would be responsible for providing the court with "appropriate documentation ... that funds had been collected." *See supra* ¶ 3.