IN THE

# ARIZONA COURT OF APPEALS
## DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee,*

*v.*

REUBEN RENEE COTA,
*Appellant.*

No. 2 CA-CR 2013-0185
Filed February 25, 2014

---

Appeal from the Superior Court in Pima County
No. CR20111966001
The Honorable Deborah Bernini, Judge

**AFFIRMED IN PART; VACATED IN PART**

---

COUNSEL

Thomas C. Horne, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Kathryn A. Damstra, Assistant Attorney General, Tucson
*Counsel for Appellee*

Nicole Farnum, Phoenix
*Counsel for Appellant*

---

**OPINION**

Judge Eckerstrom authored the opinion of the Court, in which Presiding Judge Kelly and Judge Espinosa concurred.

---

E C K E R S T R O M, Judge:

¶1        Following a jury trial, appellant Reuben Cota was convicted of armed robbery, aggravated assault with a deadly weapon or dangerous instrument, and aggravated robbery.  He was sentenced to concurrent prison terms, the longest of which was seven years, and the trial court entered a criminal restitution order. On appeal, he argues the court erred by holding an additional closing argument in his absence.  Because Cota waived his presence at that argument, and because he has failed to show any resulting error or prejudice, we affirm his convictions and sentences. However, we vacate the criminal restitution order, in part, and publish this opinion to clarify the following limitation we left implicit in *State v. Lopez*, 231 Ariz. 561, 298 P.3d 909 (App. 2013):  as to sentences imposed on or after April 1, 2013—the effective date of the 2012 amendments to A.R.S. § 13-805, 2012 Ariz. Sess. Laws, ch. 269, § 2—criminal restitution orders may be lawfully entered at sentencing for the unpaid balance of any court-ordered restitution, pursuant to the new § 13-805(B).

**Right to Presence**

¶2        During their deliberations, jurors submitted two questions to the trial court concerning the armed robbery charge and the court's instructions regarding intent and accomplices.  The court determined these questions warranted further argument by counsel and informed the attorneys that they each would be given five minutes to clarify the issues.  *See* Ariz. R. Crim. P. 22.4 & cmt. (permitting further proceedings to assist jurors at impasse, including "additional closing argument").   The following exchange then occurred regarding Cota's presence at the argument:

> [DEFENSE COUNSEL]:  And if we are going to argue in front of the jury my client is on call.
>
> THE COURT:  Call him.  Get him over here now while we're making copies.
>
> . . . .

(Bailiff leaves to make copies.)

(Defense counsel makes a call.)

THE COURT: If you want I can tell them he's clearly on his way, that we're in contact with him, but we didn't want to delay them any further so that they don't think he's not here.

It's up to you.

[DEFENSE COUNSEL]: I can do that.

Before the argument began, the court consequently informed the jury, "Please understand that Mr. Cota, we are in total contact with him, it was just going to take him an additional ten minutes to get here to the courthouse. So with his permission and [defense counsel]'s permission I'm going to handle the questions with him not present."

**¶3** Citing this portion of the transcript, the state asserts in its answering brief that Cota either waived his presence through counsel or invited the error of which he now complains. Cota appears to concede as much in his opening brief, and his failure to file a reply provides an adequate basis to affirm. *See State v. Morgan*, 204 Ariz. 166, ¶ 9, 61 P.3d 460, 463 (App. 2002) (recognizing failure to file reply brief on issue presented in answering brief as sufficient basis for rejecting appellant's position); *Ariz. Dep't of Pub. Safety v. Indus. Comm'n*, 170 Ariz. 275, 277, 823 P.2d 1283, 1285 (App. 1991) ("A failure to reply to arguments raised in an answering brief may justify a summary disposition of an appeal.").

**¶4** In any event, we would find no basis for relief on the merits of Cota's claim. The lack of an objection to proceeding in his absence results in fundamental-error review of this issue on appeal. *See State v. Dann*, 205 Ariz. 557, ¶¶ 55, 71, 74 P.3d 231, 246, 249 (2003). Under this standard, a defendant bears the burden of showing that an error occurred, that the error was fundamental, and that it resulted in prejudice. *State v. Maldonado*, 223 Ariz. 309, ¶ 25,

223 P.3d 653, 657 (2010).[1]  Contrary to Cota's assertion, a defendant's personal waiver is not required in order to proceed in his absence. *E.g.*, *State v. Swoopes*, 216 Ariz. 390, ¶¶ 29-32, 35, 166 P.3d 945, 954-56 (App. 2007) (concluding defendant not personally required to waive presence during trial court's answer to jury question); *State v. Campbell*, 146 Ariz. 415, 418, 706 P.2d 741, 744 (App. 1985) (finding no error when counsel waived defendant's presence without defendant objecting).  We thus find no error, fundamental or otherwise, in the proceedings here.  *See State v. Diaz*, 223 Ariz. 358, ¶ 11, 224 P.3d 174, 176 (2010) (noting defendant "must first establish that some error occurred" under any review standard).  Nor has Cota demonstrated any prejudice resulting from his absence, as the trial court's explanation suggested to jurors that he had acted merely out of courtesy for their time.

**Criminal Restitution Order**

**¶5**        The state has independently raised an issue concerning Cota's criminal restitution order (CRO).  At sentencing, the trial court ordered Cota to pay $400 in attorney fees, a $20 time payment fee, a $25 indigent administrative assessment fee, and $1,212.33 in victim restitution.  The court then reduced all "fees, assessments and/or restitution" to a CRO, specifying that "no interest, penalties, or collection fees" would accrue during the defendant's incarceration.[2]

---

[1]Cota does not assert that the alleged error was structural, and thus presumptively prejudicial, *see State v. Valverde*, 220 Ariz. 582, ¶ 10, 208 P.3d 233, 236 (2009), nor would we find it to be so.  *See State v. Forte*, 222 Ariz. 389, ¶ 15, 214 P.3d 1030, 1035 (App. 2009) (recognizing "not all species of 'presence error' are necessarily structural").

[2]Although boilerplate language in the sentencing minute entry also listed a "fine" among the items that might be included in the CRO, the court did not actually impose a fine in this case. Accordingly, we do not resolve any questions concerning the interplay of fines, restitution, and CROs in this opinion.

**¶6** Relying on this court's decision in *Lopez*, 231 Ariz. 561, ¶ 2, 298 P.3d at 910, the state alerted us that the entry of the CRO was premature and unauthorized, amounting to fundamental, prejudicial error adverse to the defendant.[3] The state therefore requested that the CRO be vacated. Although the CRO is indeed flawed in several respects, the state originally overlooked that *Lopez* involved only "fines, fees, and assessments," *id.* ¶ 1, and its holding does not necessarily apply to the restitution portion of a CRO. Since this court ordered supplemental briefing on the issue, the state has refined its position and now requests that we affirm the CRO as to the victim's restitution, but vacate the remainder of the order. We agree with the state's analysis.

**¶7** Construing and applying § 13-805 in this case presents questions of law, which we analyze de novo. *See State v. Pinto*, 179 Ariz. 593, 595, 880 P.2d 1139, 1141 (App. 1994). When interpreting a statute, our task "is to ascertain and give effect to the legislature's intent." *State v. Zaputil*, 220 Ariz. 425, ¶ 9, 207 P.3d 678, 681 (App. 2008). To do so, we look first to the language of the statute. *Id.* If there is uncertainty about its meaning, we attempt to discern legislative intent by considering the statute's context, language, subject matter and historical background, effects and consequences, and spirit and purpose. *Haag v. Steinle*, 227 Ariz. 212, ¶ 9, 255 P.3d 1016, 1018 (App. 2011).

---

[3]We commend the state's appellate counsel, Ms. Damstra, for the professionalism she displayed in identifying this error—an error which adversely affected her opposing party, not the state, and which caused this court to order supplemental briefing on the question. *See* ER 3.8 cmt. 1, Ariz. R. Prof'l Conduct, Ariz. R. Sup. Ct. 42 ("A prosecutor has the responsibility of a minister of justice and not simply that of an advocate."). We recognize that both appellate counsel for the state and the defendant carry substantial workloads, and we therefore appreciate the supplemental briefing received from both parties.

**Restitution**

¶8        We previously intimated that the 2012 amendments to § 13-805 permit a court to enter a CRO at sentencing in certain circumstances. *State v. Torres*, 233 Ariz. 479, n.2, 314 P.3d 825, 828 n.2 (App. 2013). This case represents just such a circumstance. The trial court sentenced Cota in April 2013 and ordered him to pay the victim over $1,000 in restitution for medical expenses the victim had incurred from being stabbed. Section 13-805(B) therefore applies, and it provides as follows:

> At the time the defendant is ordered to pay restitution by the superior court, the court may enter a criminal restitution order in favor of each person who is entitled to restitution for the unpaid balance of any restitution order. A criminal restitution order does not affect any other monetary obligation imposed on the defendant pursuant to law.

Because § 13-805 no longer categorically prohibits the entry of a CRO at sentencing, our decision in *State v. Lewandowski*, 220 Ariz. 531, ¶¶ 8-10, 15, 207 P.3d 784, 787-88, 789 (App. 2009), the foundation of *Lopez*, has been partly superseded by this statutory change.

¶9        Although Cota committed his offenses on June 5, 2011 — before the amendments to § 13-805 had been passed or had taken effect — the new subsection (B) nevertheless applies to him because it is a non-punitive, procedural provision that was in effect when he was sentenced.[4] A purely procedural change in the law applies to

---

[4] We acknowledge that prior opinions of this court have expressly applied the version of § 13-805 in effect at the time of a defendant's offenses. *E.g.*, *Torres*, 233 Ariz. 479, n.2, 314 P.3d at 828 n.2; *State v. Pena*, 233 Ariz. 112, n.5, 309 P.3d 936, 941 n.5 (App. 2013); *State v. Borquez*, 232 Ariz. 484, n.1, 307 P.3d 51, 56 n.1 (App. 2013); *Lopez*, 231 Ariz. 561, n.1, 298 P.3d at 910 n.1. But in those cases, the defendants had been sentenced before the effective date of the 2012

pending criminal cases because a defendant has "no vested right to a particular mode of procedure." *State v. Leonard*, 151 Ariz. 1, 4, 725 P.2d 493, 496 (App. 1986). Procedural law "'prescribes the method of enforcing a right or obtaining redress for the invasion of that right,'" whereas substantive law "'creates, defines and regulates rights.'" *State v. Weinbrenner*, 164 Ariz. 592, 593, 795 P.2d 235, 236 (App. 1990), *quoting State v. Fletcher*, 149 Ariz. 187, 191, 717 P.2d 866, 870 (1986) (emphasis omitted). "Statutory changes are procedural if they have neither made criminal a previously innocent act nor aggravated a crime previously committed nor provided greater punishment nor changed proof necessary to convict." *State v. Beltran*, 170 Ariz. 406, 408, 825 P.2d 27, 29 (App. 1992).

¶10 An examination of the legislative intent and effects of § 13-805(B) confirms its procedural character. *See State v. Henry*, 224 Ariz. 164, ¶ 9, 228 P.3d 900, 903 (App. 2010). The primary purpose of this provision is to provide crime victims a mechanism for collecting the "prompt restitution" they are entitled to receive under article II, § 2.1(A)(8) of the Arizona Constitution, also known as the Victims' Bill of Rights (VBR). *See State v. Unkefer*, 225 Ariz. 430, ¶ 24, 239 P.3d 749, 755 (App. 2010) (observing § 13-805 enacted "to assist victims in obtaining prompt restitution") (emphasis omitted), *disapproved in part on other grounds by Hoffman v. Chandler*, 231 Ariz. 362, ¶ 14, 295 P.3d 939, 942 (2013); *Pinto*, 179 Ariz. at 596, 880 P.2d at 1142 (same); *see also* A.R.S. § 13-804(E) (requiring court to "make all reasonable efforts to ensure that all persons entitled to restitution pursuant to a court order promptly receive full restitution"). As the supporters of the amendment explained, § 13-805(B) is designed to create "an enforceable civil judgment within days of the time the defendant is sentenced," thereby "protect[ing] victims and get[ting] them the restitution they deserve." *Minutes of H. Comm. on Jud.*, 50th

---

amendments, making it unnecessary to clarify the point. In other cases, we have applied the version of § 13-805 in effect at the time a CRO was entered, rather than the date of the offense. *E.g.*, *State v. Unkefer*, 225 Ariz. 430, ¶¶ 1-2, 5-6 & n.2, 239 P.3d 749, 751 & n.2 (App. 2010), *disapproved in part on other grounds by Hoffman v. Chandler*, 231 Ariz. 362, ¶ 14, 295 P.3d 939, 942 (2013).

Leg., 2d Reg. Sess. (Ariz. Feb. 9, 2012). In this way, the provision serves the broader goal of restitution, which is to make victims whole for the economic losses they suffer from crimes. *State v. Guilliams*, 208 Ariz. 48, ¶ 12, 90 P.3d 785, 789 (App. 2004).

**¶11** "[T]he purpose of restitution is not to punish," *State v. Freeman*, 174 Ariz. 303, 306, 848 P.2d 882, 885 (App. 1993), and the entry of a CRO, in turn, "is not itself a penalty." *Lewandowski*, 220 Ariz. 531, n.3, 207 P.3d at 786 n.3. We have recognized that "even though it is part of the sentencing process, restitution is not a penalty or a disability." *Zaputil*, 220 Ariz. 425, ¶ 11, 207 P.3d at 681. And this fact is not altered by the mandatory accrual of interest on an unpaid restitution balance pursuant to § 13-805(E).[5]

**¶12** Much like the time payment fee addressed in *Weinbrenner*, 164 Ariz. at 594, 795 P.2d at 237, a CRO respecting restitution "merely establishes a *method* of enforcing the . . . right to redress." A defendant's restitution obligation is actually created by the VBR, not § 13-805, and he or she may avoid the operation of this statute "by paying . . . restitution amounts in a lump sum." *Weinbrenner*, 164 Ariz. at 594, 795 P.2d at 237. Hence, like the restitution lien statute we upheld in *State v. O'Connor*, § 13-805(B) is designed "to facilitate the collection of previously existing, independent, court-ordered debts owed by criminal defendants as a result of their criminal acts." 171 Ariz. 19, 23, 827 P.2d 480, 484 (App. 1992). Consequently, we conclude it neither increases punishment nor represents an impermissible ex post facto law. *See id*.

**¶13** Although in *Lewandowski*, 220 Ariz. 531, ¶ 15, 207 P.3d at 789, we emphasized the accrual of interest as a basis for vacating a CRO, that case is distinguishable because it involved interest on "fines and surcharges," *id.* ¶ 3, and the defendant was subject to these "additional payments . . . not authorized by law" due to the premature entry of a CRO. *Id.* ¶ 11. Here, by contrast, the CRO was neither premature nor illegal, and the interest that would accrue on

---

[5]We address the trial court's suspension of interest on Cota's CRO later in this opinion.

the order would apply only to the non-punitive restitution award. *See* § 13-805(B), (E).

**¶14**       We note that Cota has conceded in his supplemental brief that the current version of the statute applies to him because it is merely procedural and does not affect his punishment. The trial court was therefore authorized by the plain terms of § 13-805(B) to enter a CRO at sentencing for the unpaid $1,212.33 in restitution owed to the victim.

**Fees & Assessments**

**¶15**       The trial court was not, however, authorized to include fees and assessments in the CRO entered at sentencing. Unlike the prior statute, which "did not distinguish between restitution, fees, and fines," *Lewandowski*, 220 Ariz. 531, n.5, 207 P.3d at 788 n.5, the current § 13-805(C)(1) separately and specifically addresses the entry of CROs concerning "fines, costs, incarceration costs, fees, surcharges or assessments," and it continues to allow such entry only after a defendant absconds or completes a sentence or period of probation.[6] We presume that when the legislature uses different words in the subsections of a statute, the legislature intends to attach different meanings and consequences to the words used. *Parker v. City of Tucson*, 233 Ariz. 422, ¶ 12, 314 P.3d 100, 106 (App. 2013). And, in fact, the pertinent legislative history confirms this assumption.

**¶16**       When Representative Vogt introduced the bill that most recently altered § 13-805, it lacked the final sentence now found in subsection (B). *See H.B. 2556*, 50th Leg., 2d Reg. Sess. (Ariz. Jan. 17, 2012). Our senate then amended the bill to specify that a CRO entered at sentencing "does not affect any other monetary obligation imposed on the defendant pursuant to law," meaning it is not intended to affect such things as "fines, fees or penalties."

---

[6]Section 13-805(C)(2), in turn, mandates the entry of a CRO for any unpaid restitution at that same time, in the event a discretionary CRO for restitution has not been entered earlier pursuant to subsection (B).

*S. Amends. to H.B. 2556, Gould Floor Amend. Explanation*, 50th Leg., 2d Reg. Sess. (Mar. 16, 2012). This action underscores that the legislature understood these obligations to be different, and it intended § 13-805 to treat them differently. The items listed in § 13-805(C)(1) are generally distinct financial obligations that serve different purposes than restitution. *See, e.g.*, A.R.S. §§ 11-584(C) (assessments, fees, and costs for defendants receiving appointed counsel), 12-116(A) (time payment fee), 12-116.01 (surcharges), 12-116.02 (surcharges), 13-801 (fines), 16-954(A) (surcharge); *see generally State v. Payne*, 223 Ariz. 555, ¶¶ 31-32, 225 P.3d 1131, 1140-41 (App. 2009) (noting different purposes of punitive fines and compensatory assessments and fees, but recognizing "shades of gray" among categories). We therefore reaffirm our holding in *Lopez* that a court may not lawfully impose a CRO at sentencing with respect to fees and assessments, regardless of whether the court also attempts to suspend the accrual of interest on those items. 231 Ariz. 561, ¶¶ 2, 5, 298 P.3d at 910. As we indicated in *Lopez*, we will not "deem an unauthorized act harmless because of a second unauthorized act." *Id.* ¶ 5.

**¶17**        In holding that a CRO entered at sentencing exclusively applies to an award of restitution, we emphasize that such a CRO cannot include a "time payment fee" imposed under § 12-116(A). We acknowledge that this fee often must be ordered in conjunction with an order for restitution, because defendants typically will be unable to discharge their restitution obligations in a lump sum payment. Nevertheless, a time payment fee is, inescapably, a "fee[]" and an "obligation imposed . . . pursuant to law"; thus, the legislature has specified, by the terms of § 13-805(B) and (C)(1), that this fee cannot be included in the CRO entered at sentencing.

**Interest**

**¶18**        Finally, we note that the trial court was unauthorized to suspend the accrual of interest on the restitution award in the CRO here. As we indicated above, § 13-805(E) mandates that interest accrue on a CRO until it is fully satisfied; the statute leaves courts no discretion or authority to withhold such interest. *See Lopez*, 231 Ariz. 561, ¶ 5, 298 P.3d at 910. However, because the state failed to appeal this aspect of the court's order, we will not correct this error to

Cota's detriment, even though the CRO is "illegally lenient" in this respect. *State v. Holguin*, 177 Ariz. 589, 592, 870 P.2d 407, 410 (App. 1993); *see State v. Dawson*, 164 Ariz. 278, 282, 792 P.2d 741, 745 (1990) (emphasizing appellate court lacks jurisdiction to correct error regarding mandatory restitution, absent appeal or cross-appeal); *see also* A.R.S. § 13-4032(4) (allowing state to appeal order "affecting the substantial rights of a victim" at victim's request).

## Disposition

**¶19**        For the foregoing reasons, we affirm Cota's convictions and sentences. We also affirm the portion of the CRO concerning the $1,212.33 award of restitution and the suspension of interest thereon, but the remainder of the CRO is vacated.