NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

RODRICK LYNN JOHNSON, *Appellant.*

No. 1 CA-CR 13-0571
FILED 11-20-14

---

Appeal from the Superior Court in Maricopa County
No.  CR 2011-114400-002
The Honorable Pamela Hearn Svoboda, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Adele Ponce
*Counsel for Appellee*

Law Office of Nicole Farnum, Phoenix
By Nicole T. Farnum
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Samuel A. Thumma joined.

---

**GOULD**, Judge:

¶1        Rodrick Lynn Johnson appeals his convictions and sentences for possession of dangerous drugs for sale, a class two felony; possession of narcotics for sale, a class two felony; and possession of marijuana, a class six felony.  The principal issue on appeal is whether the trial court erred in precluding cross-examination as to the specific surveillance locations from which police officers observed Johnson at a drug house. For reasons that follow, we hold there was no error and affirm.

### FACTS AND PROCEDURAL HISTORY

¶2        Police officers conducted surveillance on an apartment after receiving information from a citizen about possible illegal drug activity at that location.  Officers watched the apartment on several occasions from different locations over a period of one week and observed a number of people going in and out of the apartment.  During their surveillance, officers observed a person, later identified as Johnson, letting people in and out of the apartment.  The officers subsequently stopped and searched two of the people they had observed enter and leave the apartment and found crack cocaine.  The police then obtained a search warrant for the apartment.

¶3        In executing the search warrant, the police found PCP, crack cocaine, marijuana, guns, cash, and a drug ledger inside the apartment and arrested Johnson and two other adult occupants.  One officer, who had been watching the apartment for approximately forty minutes prior to the execution of the search warrant, saw seventeen people visit the apartment, each staying less than five minutes.  After Johnson was arrested, this same officer identified Johnson as the person he saw letting people in and out of the apartment.

¶4        Johnson was indicted on two counts of misconduct involving weapons, one count of possession of dangerous drugs for sale,

one count of possession of narcotic drugs for sale, and one count of possession of marijuana. Upon trial to a jury, Johnson was acquitted on the two counts of misconduct involving weapons, but convicted on the three drug charges. At sentencing, the trial court determined that Johnson had six historical prior felony convictions and sentenced him as a repetitive offender to concurrent aggravated prison terms, the longest being eighteen years on the two class two felony convictions. The trial court also ordered that Johnson pay a total of $6930.50 in fines and other mandatory fees and assessments. Johnson timely appealed.

## DISCUSSION

*Limitation on Cross-Examination*

¶5        At the start of trial, the State moved to preclude any testimony regarding the precise locations from which the police officers conducted their surveillance of the apartment. The State argued that the specific surveillance locations were not relevant, and that revealing such information would jeopardize future police investigations and place the citizens who gave permission for the officers to use the locations at risk. Johnson opposed the motion, asserting that knowing the location was critical to cross-examining the officers about their observations. The trial court granted the State's motion in part, ruling Johnson would be permitted to question the officers about their surveillance, including distance from the apartment, whether faces were seen from full frontal or side views, whether there were any obstructions to the officers' view, and whether any assistive devices such as scopes were employed, but not the officers' specific surveillance locations. In explaining the ruling, the trial court stated that it had balanced Johnson's due process right to a fair trial against the public safety risk and concluded that the limitation would not hamper the defense's ability to put before the jury all the facts necessary for the jury to determine whether the officers "got good views or not, whether their vision was obscured somehow or not."

¶6        During trial, three officers testified about their surveillance of the apartment, with two of these officers identifying Johnson as a person they saw letting people in and out of the apartment. Following the testimony by these officers, Johnson moved for reconsideration of the ruling concerning the surveillance locations "so we can really meaningfully cross-examine about what may or may not have been in their way." The trial court denied the motion, reiterating that there was no limitation on cross-examination regarding the officers' ability to observe, only on the particular locations of their observation sites for

public safety concerns. In addressing the matter of the officers' sight lines, the trial court noted that photographs of the apartment had been admitted into evidence and that "it is clear that there are no trees or bushes or anything like that" obstructing the officers' view of the front door to the apartment.

¶7        Johnson argues that the trial court's ruling precluding cross-examination of the officers as to the specific locations from which they observed the apartment deprived him of his constitutional right to confront testifying witnesses against him. As a result, he claims, he was denied a fair trial because his ability to test the State's evidence was compromised. Specifically, he asserts that testimony about the surveillance locations was necessary to determine if the officers could actually see him letting people in and out of the apartment.

¶8        We review a trial court's rulings on the admission of evidence for an abuse of discretion. *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42, 140 P.3d 899, 912 (2006). Rulings implicating constitutional rights are reviewed de novo. *Id*.

¶9        A criminal defendant has a constitutional right to confront witnesses against him, which includes the right to cross-examination. *See* U.S. Const., amends. VI, XIV; Ariz. Const. art 2, § 24; *Crawford v. Washington*, 541 U.S. 36, 54 (2004). A defendant's rights under the Confrontation Clause, however, are not absolute. Rather, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Thus, Confrontation Clause guarantees are impermissibly compromised only where cross-examination is "unreasonably limited." *State v. Dunlap*, 125 Ariz. 104, 105, 608 P.2d 41, 42 (1980). A trial court's limitation on cross-examination is evaluated "on a case-by-case basis to determine whether the defendant was denied the opportunity to present evidence relevant to issues in the case or the witness'[s] credibility." *State v. Cañez*, 202 Ariz. 133, 153, ¶ 62, 42 P.3d 564, 584 (2002). "The trial court exercises considerable discretion in determining the proper extent of cross-examination, and we will not disturb the court's ruling absent a clear showing of prejudice." *State v. Doody*, 187 Ariz. 363, 374, 930 P.2d 440, 451 (App. 1996).

¶10       In Arizona, claims of privilege are governed by the common law unless otherwise provided by constitution, statute, or court rule. Ariz. R. Evid. 501. Long before the adoption of the Arizona Rules of Evidence,

Arizona recognized the common law governmental qualified privilege of non-disclosure of information in the furtherance and protection of the public interest in effective law enforcement. *See, e.g., State v. Tisnado*, 105 Ariz. 23, 24, 458 P.2d 957, 958 (1969) (recognizing privilege in regards to information concerning confidential informants); *State v. Kelly*, 99 Ariz. 136, 143, 407 P.2d 95, 100 (1965) (same). While there are no reported decisions in Arizona applying the privilege to surveillance locations, several courts in other jurisdictions have done so. *See, e.g., United States v. Harley*, 682 F.2d 1018, 1020-21 (D.C. Cir. 1982); *Anderson v. United States*, 607 A.2d 490, 495 (D.C. 1992); *People v. Criss*, 689 N.E.2d 645, 649 (Ill. App. 1998); *Commonwealth v. Lugo*, 548 N.E.2d 1263, 1265 (Mass. 1990); *State v. Garcia*, 618 A.2d 326, 329 (N.J. 1993); *Commonwealth v. Rodriquez*, 674 A.2d 225, 228-29 (Pa. 1996). As these courts have recognized, the government has similar interests in protecting both confidential informants and surveillance locations:

> Like confidential informants, hidden observation posts may often prove to be useful law enforcement tools, so long as they remain secret. Just as the disclosure of an informer's identity may destroy his usefulness in criminal investigations, the identification of a hidden observation post will likely destroy the future value of the location for police surveillance. The revelation of a surveillance location might also threaten the safety of police officers using the observation post, or lead to adversity for cooperative owners or occupants of the building. Finally, the assurance of nondisclosure of a surveillance location may be necessary to encourage property owners or occupants to allow the police to make such use of their property.

*United States v. Green*, 670 F.2d 1148, 1155 (D.C. Cir 1981). Courts also have applied the privilege to other sensitive law enforcement sources and methods. *See United States v. Cintolo*, 818 F.2d 980, 1002 (1st Cir. 1987) (location of secret identification numbers on automobile parts); *United States v. Van Horn*, 789 F.2d 1492, 1508 (11th Cir. 1986) (location and nature of surveillance equipment); *United States v. Crumley*, 565 F.2d 945, 950–51 (5th Cir. 1978) (location of hidden "track sheet" in automobile).

¶11 Because it is qualified, the privilege for public interest in effective law enforcement is subject to due process limitations, but there is "no fixed rule" as to disclosure. *Roviaro v. United States*, 353 U.S. 53, 62 (1957). Instead, whether the privilege permits non-disclosure in a particular case is determined through a balancing test controlled by "the

fundamental requirements of fairness." *Id.* at 60. The outcome depends on the circumstances of each case, taking into consideration the crime charged, the defenses, the significance of the information, and any other relevant factors. *Id.* at 62. However, where the information "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61.

¶12    The defendant bears the burden of overcoming the public safety/law enforcement privilege. *State v. Grounds*, 128 Ariz. 14, 15, 623 P.2d 803, 804 (1981). A mere possibility or speculative hope that the information might be helpful to the defendant is insufficient to overcome the privilege. *State ex rel. Berger v. Superior Court,* 21 Ariz. App. 170, 172, 517 P.2d 523, 525 (1974). Generalized claims that the information is needed for effective cross-examination or to mount an effective defense are equally insufficient. *See Rodriquez*, 674 A.2d at 229 (holding defendant seeking privileged surveillance location information "cannot rely solely on a claim that he was denied the opportunity to effectively cross-examine the officer") (internal citation and quotations omitted); *Commonwealth v. Jennings*, 630 A.2d 1257, 1263 (Pa. Super. 1993) (holding "very general argument" that "cross-examination would be blocked without specific knowledge of the location from which [the officer] viewed the alleged criminal activity . . . falls far short" of overcoming the privilege); *Hollins v. Commonwealth*, 450 S.E.2d 397, 400 (Va. App. 1994) (upholding the surveillance location privilege where defendant "only generally alleged that disclosure was 'material' to his effective cross-examination of the officer"). To overcome the privilege, the defendant must make a showing of particularized need supported by evidence, with our supreme court making clear that "[a]rgument of counsel is not evidence." *Grounds*, 128 Ariz. at 15, 623 P.2d at 804.

¶13    Here, the sole claim advanced by Johnson is that cross-examination of the officers as to their specific surveillance locations was necessary to determine whether the officers could see Johnson at the front door of the apartment. As the trial court noted in denying the motion for reconsideration, however, the evidence at trial showed that there were no obstructions to any view of the door to the apartment. Johnson did not dispute the trial court's observation at trial and does not identify on appeal any evidence in the record that raises any issue of fact as to whether information on the specific surveillance locations would have assisted in showing that the officers' views of the apartment door were obstructed. On this record, there was no error by the trial court in precluding disclosure of the surveillance locations.

*Restitution Order*

**¶14**      Johnson argues the trial court erred by entering a criminal restitution order at sentencing with respect to the fines and fees assessed against him.  A trial court lacks authority to enter a criminal restitution order for fines and fees at sentencing; such an order may only be entered at completion of the sentence.  Ariz. Rev. Stat. § 13-805(C)(1); *State v. Cota*, 234 Ariz. 180, 184-85, ¶ 15, 319 P.3d 242, 246-47 (App. 2014); *see also State v. Lopez*, 231 Ariz. 561, 562, ¶ 2, 298 P.3d 909, 910 (App 2013) (holding imposition of criminal restitution order before defendant's probation or sentence has expired constitutes an illegal sentence, which is fundamental, reversible error).

**¶15**      Although the trial court did state without qualification while sentencing a co-defendant that the various fines and fees assessed would be reduced to a restitution order, the trial court later correctly told Johnson during his sentencing that, in accordance with A.R.S. § 13-805(C)(1), any outstanding balance on the assessed fines and fees "will be reduced to a criminal restitution order upon your release from the Department of Corrections."  Review of the record reveals that no criminal restitution order has yet been entered by the trial court against Johnson in this matter.  Accordingly, this claim of error is without merit.

## CONCLUSION

**¶16**      For the reasons stated, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED : jt